**Opinion issued March 17, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00966-CR

_____

**ARKADI MINASSIAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1300894**

---

## O P I N I O N

A grand jury indicted Arkadi Minassian for the offense of fraudulent possession of identifying information. *See* TEX. PENAL CODE ANN. § 32.51 (West Supp. 2013). Minassian moved to suppress the evidence that law enforcement seized at the time of his arrest, contesting both the lawfulness of that arrest and the

search of (1) the white Nissan Armada in which he was traveling at the time of his arrest, and (2) two laptop computers found within the Nissan. The trial court denied the motion. Minassian then pleaded guilty, and the trial court assessed his punishment at thirty years' confinement. On appeal, Minassian contends that (1) his arrest was unlawful because police lacked probable cause to arrest; (2) the police search was unlawful; and (3) he received ineffective assistance of counsel. Finding no error, we affirm.

## BACKGROUND

The United States Secret Service began investigating an organized crime ring that placed "skimmers," or devices that capture credit information and permit it to be wirelessly downloaded onto a nearby laptop computer, on gas pumps at gas stations in the Dallas area. Investigators suspected that Minassian was a participant in the scheme. A confidential informant notified officers that Minassian planned to travel from Dallas to Houston in connection with the scheme. The day before Minassian's trip, members of the Houston Police Department's regional interagency task force on fraud received an alert that four skimmers had been found on gas pumps at a Valero gas station on Beamer Road in Houston. Special Agent Charles Hutchins, Jr., with the United States Secret Service in its Houston office, confirmed that the skimmers discovered in Houston matched the description of ones seized in connection with a Dallas investigation.

On the day that Minassian's plane was due to arrive in Houston, a Valero technician discovered four additional skimmers at another Houston-area gas station, on Bay Area Boulevard in Clear Lake. The technician notified the Secret Service's Houston Field Office of his finding.

Meanwhile, task force members began surveillance of Minassian when he arrived at George Bush Intercontinental Airport. From the airport, Minassian and another man drove to the Valero gas station on Bay Area Boulevard. Neither he nor the driver attempted to pump gas. They departed from the gas station a few minutes later. Minassian and the man then drove to the Valero gas station on Beamer Road. Officers observed the vehicle stop at a gas station pump, but again, neither Minassian nor the driver attempted to pump gas.

Officers arrested Minassian and the driver and searched the vehicle. An open and powered-on laptop sat in the passenger-seat area. Police seized a second laptop, two GPS devices, six universal keys for gas pumps, several cell phones, double-sided tape, two thumb drives, and a USB radio receiver/transmitter device. Minassian possessed two different California Driver's licenses, one with his name and photo, and a second one with the name "Ashot Aslanian" and Minassian's photo. The American Airlines ticket stubs in Minassian's possession showed a flight ticketed to Ashot Aslanian.

A Secret Service agent searched the laptops at the scene. In that search, the

agent discovered about 10,000 credit card numbers and the names associated with them. Six days later, a federal magistrate issued a warrant for the further search of the laptops. The State alleged that this further search revealed 38,000 additional names and identifying information.

At the hearing on the motion to suppress, neither Minassian nor the State introduced testimony from live witnesses, but the trial court admitted without objection an affidavit from Special Agent Hutchins as well as a copy of the federal warrant and color copies of the two different California driver's licenses. In the affidavit, Hutchins averred in part:

> 2. This case originated on 03/25/11, when I was contacted by Special Agent (SA) Troy Saria, United States Secret Service (USSS), Dallas Field Office, regarding an on-going case in their district involving gas pump skimmers. Through his investigation, SA Saria determined Minassian is involved in an organized crime ring responsible for distributing highly sophisticated gas pump skimmers to several cities and downloading the credit card numbers, initially thought to be through Bluetooth, but later determined to be via Zigbee Radio technologies. The device works in the following manner: The skimmer is installed in a gas pump and the user can download its contents (credit card name and account number) from a laptop within a 100 meter range. Bluetooth devices are discoverable on wireless networks, whereas Zigbee Radio technologies are not. SA Sarria stated he received information that Minassian would be traveling from Dallas, TX to Houston, TX, on 03/29/11, and departing on 03/30/11. SA Sarria stated Minassian was traveling under the alias Ashot Aslanyan.

> 3. On 03/28/11, Sgt. Gorski, HPD and Houston Area Fraud Task Force (HAFTF) member, was notified 4 skimmers were found in 4 different gas pumps at a Valero gas station located at 11499 Beamer Rd., Houston, TX 77089. Sgt. Gorski, SA Russell Sparks, and I met

4

with Valero technician James Henderson and observed the gas pump skimmers in 4 different pumps. The skimmers are described as a black hard plaster square block with connection cables to the card reader and key pad of the gas pump attached to the pump with double sided tape. Each skimmer was labeled with a name believed to be a city. I confirmed with SA Sarria the description of these skimmers matched the skimmers seized in Dallas throughout their investigation.

4.   On 03/29/11, Valero technician James Henderson notified the USSS Houston Field Office that he conducted an inspection of another Valero gas station, located at 2404 Bay Area Blvd., Clear Lake, TX 77058. Henderson discovered 4 additional skimmers at 4 separate gas pumps at this Valero gas station. All skimmers are in the custody of the USSS.

5.   Continuing on 03/29/11, members of the HAFTF conducted surveillance of Minassian upon his arrival into Bush Intercontinental Airport. Minassian departed the airport riding in the passenger seat of a white Nissan Armada, California License Plate (LP) 5GRC174, registered to Arvin Mehrabian. Minassian and the driver, later determined to be Arin Mehrabian, drove directly to the Valero gas station, located at 2404 Bay Blvd. Neither the driver nor the passenger attempted to get gas, and approximately 2-3 minutes later, the Nissan Armada departed the scene in an erratic behavior and at a high rate of speed. Mobile surveillance was discontinued.

6.   Continuing on this date, members of the HAFTF conducted stationary surveillance at the Valero gas station, located at 11499 Beamer Rd. The Nissan Armada, LP 5GRC74, was observed driving up to the gas station pump and again neither the driver, nor the passenger, attempted to pump gas. Members of the HAFTF arrested Minassian and Meharbian without incident. Search incident to arrest revealed an open, powered on, laptop in the passenger seat area, an additional laptop, 2 GPS devices, 6 universal keys for gas pumps, several cell phones, double sided tape, 2 thumb drives, and a USB radio receiver/transmitter device. Mehrabian also possessed notebook paper containing a list of addresses, including the addresses to both gas stations which contained the skimmers. Due to the risk of losing the data stored on the computers, the laptops were immediately examined by SA Sparks. Approximately 10,000 credit card numbers

and names associated with these numbers were discovered. Efforts are on-going to examine the 8 skimmers found at the aforementioned gas pumps.

After the hearing, the court denied Minassian's motion to suppress the evidence seized in connection with his arrest. Minassian subsequently pleaded guilty. The trial court admonished him about the potential range of punishment and other consequences of his plea; it then accepted Minassian's plea and assessed his punishment at thirty years' confinement.

Minassian moved for a new trial, contending that he had received ineffective assistance of counsel. At the hearing on the motion for a new trial, Minassian introduced a transcript of the suppression hearing and its accompanying exhibits, as well as his own declaration and affidavits from his wife and an attorney representing him in California describing the circumstances of the plea. In opposition, the State introduced an affidavit from Minassian's former counsel, who had withdrawn from the representation. The court denied the motion for new trial.

## DISCUSSION

### I. Probable Cause to Arrest

Minassian first contends that law enforcement lacked probable cause to arrest him and therefore violated his constitutional right to be free of unreasonable seizures. *See Brown v. State*, 481 S.W.2d 106, 109 (Tex. Crim. App. 1972) (probable cause is a prerequisite to warrantless arrest). He argues that he was not

6

in a suspicious place when he was taken into custody and exigent circumstances did not require his arrest without first obtaining a warrant. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (West Supp. 2015) (warrantless arrest permitted when person is found in a suspicious place under circumstances that reasonably show he is guilty of a felony); *Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005) (warrantless arrest under Section 14.03(a)(1) requires showing of exigent circumstances). He further contends that his lawyer failed to effectively challenge the validity of the arrest, which directly led to his plea agreement.

## A. Standard of Review

We review the trial court's ruling on a motion to suppress for abuse of discretion. *Castleberry v. State*, 425 S.W.3d 332, 334 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). We defer to the trial court's assessment of the credibility of witnesses and determination of historical facts. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006); *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). As the trial court did not file findings of fact, we view the evidence in a light most favorable to the trial court's ruling. *Torres*, 182 S.W.3d at 902. We review the trial court's application of the law de novo when deciding whether there is probable cause for a warrantless search or seizure. *Id.* We review the ultimate question of whether a particular search is reasonable or supported by probable cause de novo as well. *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App.

2009); *Dixon*, 206 S.W.3d at 616. The trial court's implicit conclusion that Minassian was in a suspicious place at the time of his warrantless arrest is subject to the same standard of review as the probable cause determination. *E.g.*, *State v. Parson*, 988 S.W.2d 264, 267 (Tex. App.—San Antonio 1998, no pet.).

**B.     Analysis**

**1.     Informant Corroboration**

Probable cause for an arrest exists when the totality of the circumstances show that law enforcement has "reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). While probable cause requires "a relatively high level of suspicion," it is "far short of a preponderance of the evidence standard." *Baldwin*, 278 S.W.3d at 371; *accord Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013) (preponderance of the evidence "is a much higher standard" than probable cause). And it requires "far less evidence" than is necessary to support a finding under a preponderance of the evidence. *Guzman*, 955 S.W.2d at 87. Under this standard, information from a confidential informant that has been corroborated through independent investigation by law enforcement may supply probable cause for an arrest. *See Angulo v. State*, 727 S.W.2d 276, 278–80 (Tex. Crim. App. 1987).

Minassian first contends that his arrest resulted from a confidential

informant's tip alone without evidence that the informant was credible and reliable. *See Lowery v. State*, 843 S.W.2d 136, 140–41 (Tex. App.—Dallas 1992, pet. ref'd) (probable cause lacking where information supplied by informant was not shown to be reliable or credible). Thus, he contends, the trial court erred in denying his motion to suppress.

But the record shows that Minassian's arrest was not based solely on an informant's tip. The informant told law enforcement that Minassian would fly from Dallas to Houston on a particular date. The accuracy of the informant's information was verified when Minassian traveled to Houston on the day in question, using an assumed name and fake driver's license. There, law enforcement observed Minassian travel directly from the airport to a gas station, and then later observed him at another gas station. Officers previously had determined that skimmers like those discovered in the Dallas area had been installed in pumps at both of these gas stations. Minassian and his companion drove to both of these stations directly from the airport; neither one attempted to pump gas at either gas station.

The information from a confidential informant in the Dallas area thus was independently corroborated by firsthand surveillance of Minassian's activities by law enforcement in the Houston area. Probable cause may arise from such a combination of sources. *E.g.*, *Angulo*, 727 S.W.2d at 280 (anonymous tip with

independent police corroboration and surveillance based on prior investigation provided probable cause). Accordingly, the trial court acted within its discretion in denying Minassian's motion to suppress on this ground.

### 2. Suspicious Circumstances

In addition to probable cause, law enforcement officers also must have statutory authorization to make a warrantless arrest. *Parker v. State*, 206 S.W.3d 593, 596–97 (Tex. Crim. App. 2006). Section 14.03(a)(1) of the Texas Code of Criminal Procedure authorizes law enforcement to arrest "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . . or are about to commit some offense against the laws." This section requires "the legal equivalent of constitutional probable cause." *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991).

Places seldom, if ever, are suspicious in and of themselves. *Dyar v. State*, 125 S.W.3d 460, 464–65 (Tex. Crim. App. 2003). Instead, whether a given place is suspicious requires a fact-specific analysis and turns on the totality of the circumstances. *Id.* at 468. The proper inquiry focuses not on whether a particular activity is innocent or criminal standing alone, but rather on the degree of suspicion that the activity engenders when viewed in the totality of the circumstances. *Guzman*, 955 S.W.2d at 87; *Hall v. State*, 795 S.W.2d 195, 197 (Tex. Crim. App. 1990) (per curiam). Innocent activities can provide probable

cause when they are coupled with prior knowledge by law enforcement that indicates a criminal offense is occurring. *Stull v. State*, 772 S.W.2d 449, 451–52 (Tex. Crim. App. 1989). With that knowledge, a place "may become suspicious" and raise a reasonable belief that the person has committed a crime. *Swain*, 181 S.W.3d at 366; *see also Goldberg v. State*, 95 S.W.3d 345, 363 (Tex. App.— Houston [1st Dist.] 2002, pet. ref'd). The same facts that support a finding of probable cause may also support a finding that a defendant was in a suspicious place. *E.g.*, *Dyar*, 125 S.W.3d at 467–68 (same facts supported findings of probable cause and that the defendant was in a suspicious place).

The facts in this case support a finding that the police arrested Minassian in a suspicious place under suspicious circumstances, i.e., upon leaving the second of two minutes-long visits to gas stations with skimmers like the ones discovered in Dallas, and without attempting to purchase gas at either location. Minassian argues that traveling to the two Houston-area gas stations is as consistent with innocent activity as it is with criminal conduct. *See Torres*, 868 S.W.2d at 802–03 (probable cause does not exist when a defendant's activities are as consistent with innocent conduct as criminal conduct). He posits, for example, that he could have visited a gas station to look at a map or GPS.

Minassian's argument is tenable only if one considers his gas-station visits in isolation from the remainder of the record, rather than in context. Law

enforcement had identified the two stations that Minassian visited as locations at which skimmers had been installed, confirmed that these skimmers were of the same type as those associated with an organized crime ring's activities in the Dallas area, suspected that Minassian was a member of this ring, and learned that he was travelling from Dallas to Houston in apparent furtherance of the ring's scheme. Law enforcement surveilled Minassian when he arrived in Houston, and observed that he went directly to one of the two stations at issue but made no attempt to pump gas. He later went to the second station and again made no attempt to pump gas.

Taken as a whole, the facts are not as consistent with innocent activity as criminal conduct, and they support a finding that Minassian was arrested in a suspicious place under circumstances that raised a reasonable belief that he had committed a crime. *See Dyar*, 125 S.W.3d at 464–85 (a place may become suspicious when circumstances raise a reasonable belief that a person has committed a crime there); *Hall*, 795 S.W.2d 197 (the proper inquiry is not limited to whether the actual activity observed is innocent or criminal but instead concerns the degree of suspicion reasonably aroused by the observed activity); *Lunde v. State*, 736 S.W.2d 665, 667 (Tex. Crim. App. 1987) (holding that another statutory provision authorizing warrantless arrest was satisfied despite that fact that law enforcement did not observe overtly criminal conduct). Thus, the trial court did

not abuse its discretion in denying the motion to suppress on this ground.

### 3. Exigent Circumstances

So long as probable cause to make the arrest exists, a warrantless felony arrest made in a public place need not be supported by exigent circumstances in order to pass constitutional muster. *Milton v. State*, 549 S.W.2d 190, 192 (Tex. Crim. App. 1977). Minassian contends without elaboration that no exigency required his immediate arrest.

Hutchins' affidavit permits a reasonable inference that Minassian and his driver were pulled over and arrested at the second gas station or on a nearby roadway. Both of these locations are public places. Accordingly, regardless of any exigency, Minassian's arrest was not constitutionally infirm, because there was probable cause. *Milton*, 549 S.W.2d at 192. Section 14.03(a)(1) of the Texas Code of Criminal Procedure, requires exigent circumstances to make a warrantless arrest premised on suspicious activity in a suspicious place. *Swain*, 181 S.W.3d at 366. Even if not in public, the possibility of escape and immediate erasure of any evidence of wrongdoing provides the necessary exigency for an immediate arrest. *Coyne v. State*, 485 S.W.2d 917, 919 (Tex. Crim. App. 1972). Thus, the trial court did not abuse its discretion in denying the motion to suppress on this ground.

## II. Standing to Challenge the Search

Minassian next contends that law enforcement violated his Fourth Amendment rights when they conducted a search of the laptops found within the vehicle without a warrant. *See Brown*, 481 S.W.2d at 109 (probable cause is a prerequisite to warrantless search). He relies on *Riley v. California* to argue that a fact-specific basis for a search must be shown in support of any invocation of the exception for exigent circumstances when undertaking a computer search. 134 S. Ct. 2473, 2493–95 (2014). The State responds that Minassian lacks the standing necessary to challenge this search and that sufficient exigent circumstances existed for the initial search.

### A.    Standard of Review

To challenge the constitutionality of a search, a defendant must have "a legitimate expectation of privacy in the place invaded." *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Absent a legitimate expectation of privacy, a defendant lacks standing to raise this issue and we may not consider the substance of his complaint. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).

A defendant has the burden of showing his standing to challenge a search by "proving facts establishing a legitimate expectation of privacy." *Villarreal*, 935 S.W.2d at 138. Allegations in a motion to suppress are not "self-proving" and are

insufficient to establish standing without proof. *Calloway v. State*, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988); *accord Handy v. State*, 189 S.W.3d 296, 299 (Tex. Crim. App. 2006) (assertion made in motion to suppress that the residence searched belonged to the defendant held insufficient as "he presented no proof of such claim"). Evidence must prove both that the defendant "exhibited an actual subjective expectation of privacy" and that society recognizes this expectation as an objectively reasonable one under the circumstances. *Villareal*, 935 S.W.2d at 138.

We consider a variety of factors to determine whether a defendant has standing to challenge a search. *See e.g.*, *State v. Granville*, 423 S.W.3d 399, 406–08 (Tex. Crim. App. 2014) (listing multiple considerations). For example, a defendant typically has standing to challenge the search of places and objects he owns, including a car. *Id.* at 406–07. But he does not have standing to challenge the search of a vehicle in which he is a passenger absent additional facts demonstrating a reasonable expectation of privacy. *Jones v. State*, 119 S.W.3d 766, 787 (Tex. Crim. App. 2003) (fact that the defendant was a passenger in the vehicle and had driven it on prior occasions did not suffice to prove reasonable expectation of privacy). Proximity to the place or item searched does not confer standing absent other indicia of ownership or other reasonable expectation of privacy. *Rawlings v. Kentucky*, 448 U.S. 98, 100–06, 100 S. Ct. 2556, 2559–62

(1980) (examining the facts in the record to ascertain whether the defendant had a reasonable expectation of privacy in a companion's purse that was located between the defendant and his companion).

As with Minassian's challenges to his arrest, we defer to the trial court's factual findings and review the legal issue of standing de novo. *Kothe*, 152 S.W.3d at 59.

## B.  Analysis

Law enforcement searched the vehicle in which Minassian was a passenger incident to his arrest. *See State v. Tereco*, 467 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (referring to search incident to an arrest as a well-established exception to the warrant requirement).  We have concluded that the arrest was lawful.  The search-incident-to-arrest exception to the warrant requirement, however, does not render an immediate, warrantless search of the laptops found in the car constitutional, and it is this further search that Minassian challenges. *See Riley*, 134 S. Ct. at 2493–95.

One of the two laptops was discovered in the passenger area of the vehicle in which Minassian was traveling as a passenger, and the other was located elsewhere within the vehicle.  In the trial court, Minassian asserted in a footnote to his motion to suppress that the computers "were both personal computers, with personal information, under his control."  But Minassian did not introduce any evidence in

16

support of this allegation at the suppression hearing. Nor is there any evidence of ownership of the laptops elsewhere in the record. The argument of counsel, as opposed to evidence, is not enough to show standing. *Handy*, 189 S.W.3d at 299; *Calloway*, 743 S.W.2d at 650. The fact that Minassian was seated near one laptop is not proof of ownership without evidence linking him to it. *Rawlings*, 448 U.S. at 100–06, 100 S. Ct. at 2559–62.

In sum, Minassian failed to carry his burden to prove a legitimate expectation of privacy in the laptops. We hold that he failed to establish standing to challenge law enforcement's search of them. *Granville*, 423 S.W.3d at 405. Accordingly, the trial court did not abuse its discretion in denying Minassian's motion to suppress on this ground. Thus, we do not reach the State's further contention that sufficient exigent circumstances existed for the search.

## III. Ineffective Assistance

Finally, Minassian contends that his trial counsel rendered ineffective assistance at the suppression hearing. He points to two deficiencies: (1) counsel should have objected to introduction of the federal affidavit that detailed the results of the search of the laptops, because this information was unlawfully obtained; and (2) counsel erroneously advised him about the potential range of punishment.

### A. Standard of Review

When, as here, ineffective assistance claims are raised in a motion for new

trial, rejected by the trial court, and reasserted on appeal, we "analyze the ineffective assistance of counsel issue as a challenge to the denial of the motion for new trial." *Starz v. State*, 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). We review the trial court's ruling on ineffectiveness for an abuse of discretion, viewing the evidence in a light favorable to the trial court's ruling. *Id.*

To prevail on his claim of ineffective assistance, Minassian must prove that his lawyer's performance fell below an objective standard of reasonableness and that this deficiency prejudiced his defense. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). He bears the burden of proof on both issues, and failure to make either showing by a preponderance of the evidence will defeat his ineffectiveness claims. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Ineffective assistance may render a plea involuntary. *Labib v. State*, 239 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "In determining whether a plea is voluntary, we consider the record as a whole." *Id.* When the record shows that a trial court properly admonished the defendant, the admonishment is prima facie evidence of voluntariness, and shifts the burden to the defendant "to show that he entered the plea without understanding the consequences." *Id.*

18

We begin with a presumption that a lawyer performed within professional norms. *See Lopez*, 343 S.W.3d at 142–43. We do not assume that counsel lacked a sound reason for making the choices he did, rather the defendant must demonstrate that no plausible reason exists for a particular act or omission. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Without testimony from counsel, we cannot meaningfully assess his strategic reasons for making the choices he did. *Crawford v. State*, 355 S.W.3d 193, 199 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see also Lagaite v. State*, 995 S.W.2d 860, 864 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) ("When the record is silent as to counsel's reasons for his actions, we will not speculate as to counsel's trial strategy.").

### B. Analysis

### 1. Failure to object and to adduce evidence of standing

Reciting the results of law enforcement's search of the laptops, Minassian contends that his counsel should have objected to the admissibility of the part of the federal affidavit in which Agent Hutchins avers that law enforcement discovered about 10,000 credit card numbers in an initial search and the names associated with them. Minassian maintains that this proof was obtained as a result of his unlawful arrest. *See Wong Sun v. United States*, 371 U.S. 471, 484–88, 83 S. Ct. 407, 415–17 (1963) (evidence illegally obtained must be excluded).

Minassian's trial counsel argued to the trial court that the results that were obtained from the laptop in the initial search were inadmissible. Counsel thus made the trial court aware of Minassian's objection to the admissibility of the information from the laptop at the suppression hearing. We have held, however, that Minassian did not establish standing to contest that search and that Minassian's arrest was lawful. In the context of a motion to suppress, a defendant must develop the facts that show that the motion would have been granted. *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002); *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

The record here does not detail any facts to support such a conclusion. The State submitted an affidavit made by Minassian's trial counsel. In that affidavit, counsel avers that, while on bond in this case, Minassian had been "charged with felony theft by charging thousands of dollars on someone else's credit card." There was also an allegation by the State that a second search of the laptops pursuant to a federal search warrant revealed an additional 38,000 names and identifying information. Counsel's affidavit does not address the laptops or suppression-related arguments concerning them or any consequences of admitting ownership or possession of the laptops. Absent evidence of counsel's strategy, we cannot assess his reasons for his decisions in connection with the motion to suppress or whether those reasons were deficient. *Crawford*, 355 S.W.3d at 199.

In sum, Minassian has not shown that the motion to suppress would have been granted absent deficient performance. *See Ortiz*, 93 S.W.3d at 93; *Jackson*, 973 S.W.2d at 957. We therefore hold that the trial court did not abuse its discretion by denying Minassian a new trial on this ground.

### 2. Voluntariness of the plea

Minassian alleges that his lawyer advised him that the trial court would assess punishment of less than 20 years, and it would be more severe if he was convicted after a trial. Minassian introduced his own declaration and affidavits made by his wife and a lawyer representing him in California.

Minassian's trial counsel denies these allegations. In addition, the record as a whole controverts Minassian's claim of involuntariness. The trial court admonished Minassian on the record. Among other things, the court informed Minassian that the range of punishment was not less than five years nor more than 99 years or life. It also confirmed that no one had coerced Minassian to plead guilty, and ensured that he understood that the court would consider the full range of punishment. Minassian initialed and signed written admonishments that included the potential range of punishment. Minassian executed a written confession in which he stipulated that he pleaded guilty without a recommendation from the prosecutor regarding punishment and that the trial court would consider the full range of punishment. The trial court signed this plea-related paperwork.

These admonishments present a prima facie showing of voluntariness. *Labib*, 239 S.W.3d at 332.

In connection with his motion for new trial, Minassian contradicted his own representations to the court that he understood that it would consider the full range of punishment. As the fact-finder, the trial court was entitled to weigh the credibility of these witnesses—even though their averments were made by declaration and affidavit—and draw its own conclusions. *Id.* at 334. By denying Minassian's motion for new trial, the court implicitly found that the version of events averred by Minassian's counsel was more credible, and we defer to this implicit finding. *Id.* Accordingly, we hold that the trial court did not abuse its discretion in denying Minassian a new trial on this ground.

## CONCLUSION

We hold that the trial court did not abuse its discretion in denying Minassian's motion to suppress or his motion for new trial. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Publish. TEX. R. APP. P. 47.2(b).

22