Opinion issued October 25, 2018



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00608-CR

————————————

**GERARDO FLORES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 15CR1477**

---

## MEMORANDUM OPINION

A jury convicted appellant, Gerardo Flores, of intoxication manslaughter, made an affirmative deadly weapon finding, and assessed appellant's punishment at 16 years' confinement and a $10,000 fine. In four issues on appeal, appellant contends that (1) he received ineffective assistance of counsel when counsel failed

to object to evidence of intoxication by alcohol, rather than intoxication by drugs as alleged in the indictment; (2) the trial court erroneously included the full statutory definition of "intoxication" in the jury charge; (3) the trial court erroneously denied a jury charge on concurrent causation; and (4) the evidence is legally insufficient. We affirm.

## BACKGROUND

### *The Accident and Investigation*

On April 2, 2015, Jessica Walker, Latifa Williams, and Ruben Pineda were walking across from the seawall in Galveston when a black car sped past them. According to Walker, the car drove "past us pretty fast to the point where, you know, our . . . jackets and stuff that we were wearing . . . looked like [they] were flying in the air basically." She testified that the black car was "going way above the speed limit" and "very, very fast." As they watched, the black car moved into oncoming traffic before crashing head-on into a van parked along the seawall.

Because of the crash, both cars left the roadway and landed on the sand below the seawall. Pineda jumped down from the seawall and ran first to the van, in which the complainant, Rosalina Bruno, had been sitting. He saw that Bruno was unconscious, but, because he could not get her door opened, he moved to the black car, which was now lying on its roof in the sand.

2

Pineda noted that the driver of the black car, appellant, was hanging upside down from his seatbelt and appeared unconscious, even though he was breathing and moving. Pineda entered the car through the passenger side and sat with appellant while they awaited EMS.

When Galveston Police Officer A. Gill arrived at the scene, he checked on the driver of the van first, however he could not get into her vehicle, so he tried to break the window to permit EMS personnel to reach her. T. Robinson, a paramedic with Galveston EMS noted that Bruno's van was running, but it was in "park." Bruno was slumped over the steering wheel and was unresponsive and not breathing. EMS personnel connected a heart monitor to Bruno, and, after it was revealed that she did not have a heart rate, she was declared dead at the scene.

Robinson then attended to appellant. There were beer cans near appellant's car, but police did not know whether they came from appellant's car or were already there. Robinson noted that appellant was hanging from the seatbelt and was unresponsive. EMS personnel put appellant into a basket and lifted him onto the seawall. After he regained responsiveness, appellant was, according to Robinson, combative. "He was trying to pull his C collar off, get off the backboard and swinging his arms at EMS personnel." Robinson testified that, during the seven-minute drive to the hospital, appellant "was fighting . . . the entire time." He also "kept asking what happened and where he [was]." As a result,

3

EMS personnel had to place appellant in restraints while they were transporting him. EMS personnel also noted that appellant's pupils were 3 millimeters in diameter, or what was described as "pinpoint." This led Robinson to believe that something was wrong with appellant and that he might have ingested something.

At the hospital, appellant was treated in the ER by Dr. Charlie Cheng. Cheng noted that appellant was confused, but he did not suspect intoxication. He did concede, however, that narcotics can cause confusion. He knew that appellant was restrained, but he was not aware that appellant had been combative with EMS personnel. Cheng did not recall smelling alcohol, and when he examined appellant, his pupils appeared normal. It was his opinion that appellant's reported pupil size of 3 millimeters was "borderline," stating, "[I]t's hard to say [that appellant had a narcotic in his system based on the size of his pupils] because 3 millimeters could be normal for some people."

Galveston Police Officer T. McBride spoke to appellant in the hospital and obtained his consent for a blood draw, which was done approximately 3 hours after the accident. When later tested, appellant's blood alcohol content was 0.019 and was positive for phencyclidine ["PCP"]. When questioned by police in the hospital, appellant stated that he had a single alcoholic beverage earlier in the evening with his dinner. He also stated that he had no medical condition that would have caused the accident. When questioned about his destination that evening,

4

appellant gave an address some 20 blocks away and in the opposite direction of where he was going at the time of the accident. He remembered no details about the accident.

Appellant's car was towed to the Galveston Police Department ["GPD"], where it was inventoried by Officer S. Brewer. Brewer testified that he found a vial in the crease of the driver's seat. Subsequent tests showed that the vial was also positive for PCP.

*The Accident Reconstruction Evidence*

P. Adkins of the Houston District Crash Reconstruction Team from the Department of Public Safety testified about his examination of the Airbag Control Modules and the Crash Data Recorders from the cars involved in the accident. He concluded that appellant's vehicle was "floored" at the time it crashed into Bruno's van, which was not moving. Appellant's vehicle was at "full throttle, full gas pedal, no brake pedal and [showed a] . . . pretty consistent increase [in speed for] each half second [before the collision]." He concluded that appellant's vehicle increased in speed from 86 to 101 miles per hour in the seconds before the accident. He further concluded that, based on this information, appellant did not stop at a red light that he passed right before the accident. Sergeant R. Sanderson, a certified accident reconstructionist for GPD, testified that there was "no braking prior to impact" and that there was "nothing to show that there was any attempt to

5

stop prior to the collision." He concluded that, based on calculations made of the scene, appellant was traveling 104 miles per hour. The speed limit at that location was 40 miles per hour.

### *The PCP Evidence*

Appellant's blood was analyzed twice. R. Hawkins of the Texas Department of Public Safety Crime lab testified that her lab would report a sample as positive for PCP if it exceeded 10 nanograms per milliliter. Her lab "chose a cutoff per the research [that] is a level that consistently would show impairment." Appellant's own expert, G. Wimbish, agreed that 7 nanograms per milliliter was the lowest effective concentration that he had seen for altered mental and physical faculties. Based on Hawkins's analysis, appellant's blood sample was positive for PCP because it exceeded 10 nanograms per milliliter.

Defense counsel had the blood retested approximately one year later by the Tarrant County Medical Examiner's Office. L. Hazard testified that she would report a sample as positive for PCP if it exceeded 20 nanograms per milliliter. Based on her analysis, she concluded that appellant's blood sample was negative for PCP. She acknowledged, however, that she did find PCP in appellant's blood at 5 or 6 nanograms per milliliter, but she nonetheless reported it as negative because of her testing parameters.

6

Hawkins testified that PCP can degrade in a sample of blood over time and concluded that the PCP had degraded in the year between when she tested it and when Hazard tested it. Hazard would not testify about whether PCP would degrade.

Several witnesses testified about the effect of PCP. Hawkins testified as follows:

> PCP can affect your concentration and create disorientation and confusion. It can have effects on your muscular coordinating, which could include effects on your balance or walking. It can also affect your speech, which could range from complete unresponsiveness to incoherent rambling.
>
> PCP can cause hallucinations, which can lead to bizarre behavior, including paranoia or violence. And PCP, since it is a —classified as a dissociative anesthetic, it can desensitize you to pain, which can lead to a false sense of power in invincibility.
>
> And all of these effects that may occur when someone takes PCP can vary between person to person. They can vary between a person's incidence of using the drug and they can vary within the same instance—incident of using the drug, which can make the drug very dangerously unpredictable with those effects.

She concluded that, at the level reported by the Texas Department of Public Safety, a driver would be impaired.

Sergeant P. Atkins testified that PCP will affect a person's pupils and that their pupils may be constricted when they are at the end of a "high" period on PCP. He also noted that, while on PCP, a person's muscles would be tense, "not real

7

loose and relaxed," and that "they're very slow when answering when you ask a question."

### *Appellant's Sleep Apnea*

Appellant's defense at trial was that he was not intoxicated on PCP but that he fell asleep while driving. In support, he presented the testimony of Denise Watts, who testified that a sleep study conducted three months after the accident on July 2, 2015, showed that appellant had "severe sleep apnea." He argued that the lack of quality sleep, because of his apnea, caused him to fall asleep while he was driving. He did not, however, testify, nor did he tell the police or doctor that he had fallen asleep.

Having heard all the evidence, including the various experts, the jury concluded that appellant was guilty of intoxication manslaughter caused "by reason of the introduction of a controlled substance, a drug, a dangerous drug into the body or any combination thereof."

### **SUFFICIENCY OF THE EVIDENCE**

In his fourth issue, appellant contends that the evidence "was not sufficient to establish that [he] was intoxicated at the time of the tragic accident . . . or that any alleged intoxication was the cause of the accident." Although raised as his fourth issue, we address appellant's sufficiency point first because, in it, he seeks an acquittal. *See Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th

Dist.] 2016, no pet.) ("We address appellant's second issue first because it challenges the sufficiency of the evidence and seeks rendition of a judgment of acquittal.").

*Standard of Review and Applicable Law*

We review the sufficiency of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2789 (1979), *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) and *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). This standard of review allows a jury to resolve fact issues and to draw reasonable inferences from the evidence. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789). With respect to testimony of witnesses, the jury is the sole judge of the credibility and weight to be attached thereto, and when the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Id.* (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789).

In a sufficiency inquiry, direct evidence and circumstantial evidence are equally probative. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013)). Not every

fact presented must directly indicate the defendant is guilty, so long as the cumulative force of the evidence is sufficient to support a finding of guilt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015) (citing *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987)).

A person commits "intoxication manslaughter" if the person: (1) operates a motor vehicle in a public place . . . and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake. TEX. PENAL CODE ANN. § 49.08.

*Analysis*

Appellant argues that "the evidence that [he] was not intoxicated far outweighs any suggestion that he was intoxicated."[1]   Here, there was sufficient evidence of intoxication by PCP.  Appellant ran a red light and was driving 104 miles per hour in a 40 mile per hour zone when he crossed through oncoming traffic lanes and hit a car parked on the seawall, forcing both vehicles onto the sand below.  His accelerator was "floored," he made no efforts to stop or slow down,

---

[1]   Appellant also contends that "the admission of irrelevant and highly prejudicial alcohol-related evidence allowed the jury to render a verdict that was not sufficiently supported by facts."  However, in a sufficiency review, we must consider all the evidence in the record, whether direct or circumstantial, *properly or improperly admitted*, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Finley v. State*, 449 S.W.3d 145, 147 (Tex. App.—Austin 2014), *aff'd,* 484 S.W.3d 926 (Tex. Crim. App. 2016). Thus, in this issue, we will not consider appellant's argument that evidence of his alcohol consumption was erroneously admitted.

and the force of the impact caused his speedometer to be stuck at 110 miles per hour.

Several beer cans were found near appellant's car, he admitted to drinking one alcoholic beverage early in the evening, and one EMS personnel smelled alcohol. Appellant was confused and combative with EMS personnel and had to be restrained. He was also disoriented. EMS reported that his pupils were constricted, and there is testimony that a person coming off a PCP high could have restricted pupils.

Appellant's blood, taken 3 hours after the accident, had a blood alcohol content of 0.019 and PCP at greater than 10 nanograms per milliliter, a level at which Hawkins testified "would consistently show impairment." Appellant's expert, Wimbish, agreed that a person could show impairment at 7 nanograms per milliliter. Regarding the test finding placing the PCP in appellant's blood at 5 or 6 nanograms, Hawkins stated, "I can only say that it would not surprise me that I would test at above the cutoff and another lab would test at below the cutoff simply because it has been shown in research that the drug can degrade over time."

At the time of the accident, appellant claimed to have no medical issues that would have caused the crash.

Although appellant presented evidence that his sleep apnea may have caused him to fall asleep, the jury was not required to accept this alternative hypothesis as

to the cause of the accident. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt."); *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (holding same).

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of intoxication manslaughter beyond a reasonable doubt.

Accordingly, we overrule issue four.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, appellant contends that he received ineffective assistance of counsel because counsel "failed to object to the State's introduction of evidence related to alcohol consumption and/or intoxication where Appellant stood charged with intoxication 'by reason of the introduction of a controlled substance, a drug, a dangerous drug into the body or any combination thereof.'"[2]

***Standard of Review and Applicable Law***

---

[2]   Appellant correctly points out that the substance that causes intoxication is not an element of an intoxication offense. *Gray v. State*, 152 S.W.3d 125, 132 (Tex. Crim. App. 2003). However, when, as here, the State "unnecessarily pleads a statutory definition that narrows the manner and means in which an offense may be committed, that definition 'is the law as authorized by the indictment' and thus the allegation must be proved beyond a reasonable doubt." *Geick v. State*, 349 S.W.3d 542, 548 (Tex. Crim. App. 2011).

12

To prevail on his claim of ineffective assistance, appellant must prove that his lawyer's performance fell below an objective standard of reasonableness and that this deficiency prejudiced his defense. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 686–88, 104 S. Ct. 2052, 2063–64 (1984)). Appellant bears the burden of proof on both issues, and failure to make either showing by a preponderance of the evidence will defeat his ineffectiveness claims. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

We presume that a lawyer performed within professional norms. *See Lopez*, 343 S.W.3d at 143; *Minassian v. State*, 490 S.W.3d 629, 641 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We do not assume that counsel lacked a sound reason for making strategic choices; rather, the defendant must show that no plausible reason exists for a particular act or omission. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002); *Minassian*, 490 S.W.3d at 642. Without testimony from counsel, we will not speculate as to counsel's strategy if the record is silent as to the basis for her choices. *Minassian*, 490 S.W.3d at 642. No motion for new trial was filed, and no evidence of counsel's reasoning was introduced.

*Analysis*

Appellant, citing *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009), contends that "[n]o sound trial strategy justified trial counsel's inexplicable

13

decision to allow the introduction [of irrelevant evidence of alcohol consumption] without objection." The State responds that, because the evidence of alcohol consumption was both relevant and admissible, trial counsel was not ineffective for not objecting to its admission. We agree with the State.

In *Layton*, the defendant was stopped for a traffic violation, and he told the officer that he had taken Xanax and Valium. *Id.* at 237. The statement was recorded by the officer's dashboard-mounted video camera and played before the jury at trial. *Id.* at 237–38. Layton was charged with driving while intoxicated, and the jury was instructed that intoxicated meant "not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body." *Id.* at 241. Because the charge was limited to intoxication by use of alcohol, some expert testimony was needed to establish a connection between the defendant's use of controlled substances and the impact of such use on his later intoxication. *See id.* at 242. The Court of Criminal Appeals noted that "to be relevant in this specific case, the evidence needed to influence the jury's determination of whether Appellant was intoxicated by alcohol, not another substance combined with alcohol." *Id.* at 241. That is, the evidence of drug use would not have been relevant to Layton's case without additional evidence showing the synergistic effect of the drugs on his intoxication by alcohol, considering the time when the drugs and alcohol were used. *Id.*

14

The situation presented here is quite similar to *Layton*, but there is an important difference. Appellant, like the defendant in *Layton*, was charged with a specific type of intoxication. Here, it is intoxication by the introduction of drugs into his system, and in *Layton* it was intoxication by the introduction of alcohol. *See id.* at 241. And here, as in *Layton*, appellant contends that admission of any type of intoxication other than that charged is irrelevant. However, appellant interprets *Layton* too broadly.

The *Layton* court stated as follows:

> [T]o be relevant in this specific case, the evidence needed to influence the jury's determination of whether Appellant was intoxicated by alcohol, not another substance combined with alcohol. *Without a showing that Xanax and Valium*, taken more than 24 hours and 14 hours prior, respectively, *would have had a synergistic effect on Appellant's degree of intoxication by alcohol*, the evidence is not relevant.

*Id.* at 241 (emphasis added). The court concluded that, without expert testimony regarding any such synergistic effect, the evidence of Layton's drug use was irrelevant to his intoxication by alcohol. *See id.* ("There was no testimony indicating that Officer Allen had any medical knowledge regarding the uses of Xanax and Valium, or about the effect of combining the medications with alcohol").

The expert testimony showing a "synergistic effect" that was missing in *Layton* is present in this case. Hawkins, a forensic scientist at the Texas

15

Department of Public Safety Crime Laboratory, testified about how PCP interacts with alcohol. Specifically, Hawkins testified that adding alcohol to PCP would have an additive depressant effect, "[s]o that would be greater than one of them taken by itself." She testified as follows:

> Alcohol itself can cause a depressant effect, effects on judgment, dizziness, drowsiness, fatigue, effect on your muscular coordination. And then I'd mentioned all the effects that could possible occur with P.C.P.
>
> The two of them would simply, as I'm trying to say, it would just add together. So, you may see all of these effects. You may see some of these effects. But there would be a greater effect than they would be if they were taken by themselves.

Because there was expert evidence about the "synergistic effect" between alcohol consumption and appellant's intoxication by means of PCP, this case is distinguishable from *Layton*, and evidence of appellant's alcohol consumption was relevant and admissible on the issue of his PCP intoxication. Counsel is not ineffective for failing to object to admissible evidence. *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).[3]

We overrule issue one.

---

[3] We also note that, even if the evidence were inadmissible, its erroneous admission would be harmless in this instance. There was evidence that appellant's blood alcohol content was 0.019 grams per milliliter. The jury was instructed that a person is intoxicated when having a blood alcohol concentration of 0.08 or more. Thus, it is unlikely that the jury's verdict was based on alcohol intoxication. Counsel is not ineffective for failing to object to the harmless, but erroneous admission of evidence.

# JURY CHARGE ERROR

In issues two and three, appellant raises complaints about the jury charge. Specifically, appellant contends that the trial court erred by (1) including the full statutory definition of "intoxication" in the abstract portion of the charge and (2) refusing to submit a charge on concurrent causation. We address each claim respectively.

## *Standard of Review*

We review a claim of jury charge error in two steps. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). First, we determine whether there is error in the charge. *Id.* Second, if there is error, we review the record to determine whether the error caused sufficient harm to require reversal. *Id.* The degree of harm necessary for reversal depends upon whether the error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). An erroneous jury charge requires reversal when the defendant has properly objected to the charge and we find "some harm" to his rights. *Almanza*, 686 S.W.2d at 171. If error was not preserved, the error requires reversal only if it was "so egregious and created such harm that the defendant did not have a fair and impartial trial." *Marshall*, 479 S.W.3d at 843; *see also Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

"Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *State v. Ambrose*, 487 S.W.3d 587, 597 (Tex. Crim. App. 2016) (quoting *Marshall*, 479 S.W.3d at 843). In conducting an egregious-harm analysis, we consider the entire jury charge, the state of the evidence, the closing arguments of the parties, and any other relevant information in the record. *Arteaga v. State*, 521 SW.3d 329, 338 (Tex. Crim. App. 2017). We must review the relevant portions of the entire record to determine whether a defendant suffered actual harm, as opposed to theoretical harm, as a result of the error. *Ambrose*, 487 S.W.3d at 598.

### Definition of Intoxication

The abstract portion of the jury charge defined "intoxicated" as follows:

"Intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body, or having an alcohol concentration of 0.08 or more.

In contrast, the application paragraph of the jury charge restricted intoxication to that alleged in the indictment, i.e., intoxication by reason of a controlled substance or drug, and provided as follows:

18

Now, if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of April, A.D., 2015, in Galveston County, Texas, the Defendant, GERARDO FLORES, did then and there operate a motor vehicle in a public place *while intoxicated by reason of the introduction of a controlled substance, a drug, or a dangerous drug into the body, or any combination thereof*, and did by reason of such intoxication cause the death of an individual, namely, Rosalinda Bruno, by accident or mistake, to wit: by driving a motor vehicle into and/or hitting the said Rosalinda Bruno while parked in her motor vehicle, then you will find the Defendant guilty on the offense of Intoxication Manslaughter, as charged in Count I of the indictment. (Emphasis added).

In issue two, appellant argues that "[b]ecause the indictment alleged that Appellant's intoxication was caused by drugs and drugs alone, the trial court should have limited the definition of intoxication in the jury charge by omitting any reference to 'alcohol,' as alcohol was specifically excluded from the State's indictment." Appellant further contends that, "[b]ecause of the erroneous instruction, the jury was permitted to find Appellant guilty of intoxication based on the introduction of alcohol into his system, or a combination of drugs and alcohol and drugs, contrary to *Layton* and contrary to the indictment." Appellant did not object to the definition of "intoxication" in the abstract portion of the charge.

We have already held that *Layton* does not prohibit the introduction of evidence of alcohol consumption in this case. And, even if we assume that the trial court erred in including all the statutory methods for intoxication in the abstract portion of the charge, we nonetheless conclude that the error did not cause appellant egregious harm.

19

When the application paragraph of the jury charge correctly instructs the jury on the law applicable to the case, error in the abstract instruction is not egregious. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Gilbert v. State*, 494 S.W.3d 758, 768 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Kuhn v. State*, 393 S.W.3d 519, 529–30 (Tex. App.—Austin 2013, pet. ref'd); *see Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense."); *see also Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994) ("Although the definitions of 'intentionally' and 'knowingly' indiscriminately set forth the three alternative conduct elements, when those terms are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense."). Accordingly, because the application paragraph of the jury charge correctly applied the definition of "intoxication" as charged in the indictment, we conclude that consideration of the entirety of the jury charge weighs against a finding of egregious harm.

Accordingly, we overrule issue two.

*Concurrent Cause*

Appellant requested, and was denied, a concurrent-cause instruction. In issue three he argues that, because he "presented evidence that fatigue and severe sleep apnea were potential concurrent causes of the accident . . . a concurrent-cause instruction was appropriate."[4]

*Standard of Review and Applicable Law*

When determining whether a defensive instruction should have been provided, appellate courts "view the evidence in the light most favorable to the defendant's requested" instruction. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). In general, a defendant is entitled to a jury instruction on a defensive issue if the defensive issue "is raised by the evidence, regardless of the

---

[4]    The basis for a concurrent-causation charge is found in section 6.04 of the Penal Code, which provides:

> (a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

TEX. PENAL CODE ANN. § 6.04. When concurrent causes are present there are two possible combinations of "but for" causation: (1) the defendant's conduct was sufficient itself to have caused the harm, regardless of a concurrent cause, or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). A defendant relying on a concurrent causation theory seeks to establish that some additional cause, other than his conduct, was clearly sufficient by itself to produce the result and the defendant's conduct, by itself, was clearly insufficient. *See id.*

21

strength or credibility of that evidence." *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013); *see also Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999) (explaining that "[i]t is well-settled that an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence").

*Analysis*

Appellant contends that he was entitled to a concurrent-cause instruction because his "evidence did not suggest alternative causes, but instead delivered a consistent message:  that the accident was not caused by intoxication; rather, it was caused when [a]ppellant fell asleep at the wheel."  Appellant's position is that he was not intoxicated; he was asleep for reasons unrelated to intoxication.

A concurrent cause is "[o]ne of two or more causes that simultaneously create a condition that no single cause could have brought about." BLACK'S LAW DICTIONARY 173 (7th abridged ed. 2000). In contrast, an alternative cause "is simply a different version of the facts, one which negates at least one element of the State's case." *Barnette v. State*, 709 S.W.2d 650, 652 (Tex. Crim. App. 1986).

Appellant does not concede intoxication or argue that that there was evidence of intoxication combined with sleep apnea.  Under his version of the events, he was not intoxicated, and under the State's version he was. This presents

22

alternative, not concurrent causes, and does not entitle appellant to a concurrent-cause charge. *See Haley v. State*, 396 S.W.3d 756, 767 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding no concurrent-cause charge required when defendant denied that consumption of methamphetamine affected his mental or physical faculties and that accident occurred because he fainted due to medical issue); *see also Robbins v. State*, 717 S.W.2d 348, 351 n.2 (Tex. Crim. App. 1986) ("We also recognize that concurrent causes might not be presented where an actor denies ever committing certain charged conduct and argues instead that he conducted himself in a separate and distinct fashion."

Additionally, no concurrent cause is presented when, as here, only the appellant's conduct was involved. *See Robbins*, 717 S.W.3d at 349, 351 n.2 (holding no concurrent cause presented when defendant alleges accident was due to exhaustion and not consumption of several beers, even though he admitted drinking several beers, because "[o]nly appellant's conduct was involved").

We overrule issue three.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).