**Opinion filed October 3, 2024**



In The

# Eleventh Court of Appeals

_____

### No. 11-22-00221-CR
_____

## TIMOTHY DUANE POOR, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR56919**

### O P I N I O N   O N   R E H E A R I N G

Appellant, Timothy Duane Poor, challenges his convictions for continuous sexual abuse of a young child and compelling prostitution, both first-degree felonies. *See* TEX. PENAL CODE ANN. §§ 21.02(b), (h), 43.05(a)(2), (b) (West Supp. 2023). A jury convicted Appellant of both offenses and sentenced him to thirty-five years' imprisonment in the Institutional Division of the Texas Department of Criminal

Justice for the continuous-sexual-abuse conviction, and five years' imprisonment for the compelling-prostitution conviction.

On July 18, 2024, we issued an opinion affirming Appellant's convictions. *Poor v. State*, 695 S.W.3d 32, 59 (Tex. App.—Eastland 2024, no pet. h.). On August 19, 2024, Appellant's counsel moved to extend the deadline for filing a motion for rehearing, citing the Court of Criminal Appeals' per curiam opinion in *Turley v. State* released on June 26, 2024. *See Turley v. State*, 691 S.W.3d 612 (Tex. Crim. App. 2024). We granted an extension, and Appellant filed his motion for rehearing on September 4, 2024. We deny Appellant's motion for rehearing, withdraw our prior opinion and judgment, and substitute it with this opinion and judgment, again affirming Appellant's convictions.

Appellant originally raised five issues on appeal: (1) the trial court abused its discretion by denying his motion for new trial; (2) the trial court abused its discretion by failing to hold an evidentiary hearing on the issues raised in the motion for new trial; (3) his trial counsel was ineffective; (4) the trial court erred in excluding evidence of a witness's pending criminal charge; and (5) the trial court's charge included erroneous language.

We previously sustained Appellant's second issue, abated this appeal, and remanded the cause to the trial court to conduct an evidentiary hearing on Appellant's motion for new trial. In our abatement order, we ordered the trial court to determine whether the State failed to disclose evidence in violation of Article 39.14 of the Texas Code of Criminal Procedure, and whether Appellant received ineffective assistance of counsel. The trial court held a hearing on January 24, 2024, and denied Appellant's motion for new trial. We reinstated the case after receiving the supplemental reporter's record and the supplemental clerk's

record and addressed Appellant's four remaining issues as set forth below. In addition, we now address the complaint raised in Appellant's motion for rehearing.

*Factual and Procedural History*

Appellant was charged with compelling prostitution and continuous sexual abuse of K.F.,[1] his stepdaughter, who was twelve years old at the time of trial. L.B. married Appellant when L.B.'s daughter, K.F., was four or five years old. In 2013, Appellant and L.B. had a son, R.P. Their tumultuous relationship, which included domestic violence and involvement by the Texas Department of Family and Protective Services ("the Department" or "TDFPS"),[2] ended approximately eleven years later. The Department removed K.F. and R.P. in early 2019 but returned them to L.B. in late 2019 or early 2020. In 2021, L.B. and Appellant recommenced cohabitating as a family.

On April 26, 2021, L.B. found over twenty dollars hidden in K.F.'s room. When L.B. confronted K.F., K.F. eventually revealed that Appellant gave it to her for performing oral sex on him while L.B. was at work several days prior. L.B. called her mother, T.B., and took the children to T.B.'s home. T.B., L.B., and K.F. "had a talk" that evening, during which K.F. told them that, "more than once," Appellant "had [K.F.] put her mouth over his penis," and "put his private into her." K.F. remembered that it started in 2019, when she was just nine years old, and that "it had been going on for a while." According to K.F., Appellant would "bribe" her to engage in sexual acts by giving her money, toys, and other items, such as a piano.

---

[1]We use initials to refer to the child victim and her immediate family members. *See* TEX. R. APP. P. 9.10(a)(3) (protecting the privacy of "any person who was a minor at the time the offense was committed" by designating the minor's name, date of birth, and home address as "[s]ensitive data" requiring redaction).

[2]TDFPS is also interchangeably referred to as "Child Protective Services" and "CPS" throughout the record.

At trial, the State presented five witnesses: L.B., T.B., K.F., the forensic interviewer who interviewed K.F., and the nurse who performed K.F.'s sexual assault examination. Appellant testified in his defense and called five additional witnesses. The jury found Appellant guilty of continuous sexual abuse of a child and compelling prostitution.

Appellant filed a motion for new trial alleging that the State had withheld material TDFPS records, and that he was denied effective assistance of counsel. In support of his motion, he attached the unsworn declaration of Sara Spector, one of his two trial attorneys.

On remand at the hearing on Appellant's motion for new trial, Appellant called three witnesses: Lacey Holloman, the prosecutor at trial, and Appellant's two trial attorneys, David Phillips and Sara Spector. The trial court denied Appellant's motion.

*Discussion*

I. *Legal Sufficiency: Compelling Prostitution*

Appellant challenges, for the first time in his motion for rehearing, the sufficiency of the evidence to support his conviction for compelling prostitution, ostensibly relying on *Turley*, 691 S.W.3d 612.

We generally review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023). In some cases, however, an evidentiary-sufficiency issue

4

turns on the meaning of the statute under which the defendant has been prosecuted. *Liverman v. State*, 470 S.W.3d 831, 835–36 (Tex. Crim. App. 2015). In that circumstance, we ask if certain conduct actually constitutes an offense under the meaning of the statute. *Long v. State*, 535 S.W.3d 511, 519 (Tex. Crim. App. 2017). As with all statutory interpretation questions, this is a question of law that we review de novo. *Chambers v. State*, 580 S.W.3d 149, 156–57 (Tex. Crim. App. 2019).

When interpreting a statute, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). In doing so, we necessarily focus on the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment. *Martin v. State*, 635 S.W.3d 672, 677–78 (Tex. Crim. App. 2021). "We ordinarily give effect to that plain meaning unless application of the statute's plain language would lead to absurd results that the Legislature could not possibly have intended, or the plain language is ambiguous." *Id.*

Here, Appellant contends that Section 43.05 of the Penal Code, the statute that criminalizes the act of compelling prostitution, does not contemplate the prosecution of offenders who victimize children younger than fourteen years of age. While citing to the Court of Criminal Appeals' decision in *Turley* issued in June 2024, Appellant's ill-founded argument mirrors the rationale expressed by the Fourteenth Court of Appeals' 2020 *Turley* decision. *See Turley v. State*, 597 S.W.3d 30 (Tex. App.—Houston [14th Dist.] 2020), *rev'd*, 691 S.W.3d 612. Despite Appellant's attempt to reverse his conviction based on an erroneous interpretation of Section 43.05, we address this important question: Does a child victim's inability to legally consent to sexual conduct render the child incapable of factually committing

5

the act of prostitution under Section 43.05? The seemingly obvious answer is "no, of course not."

As applicable to this case, a person commits the offense of compelling prostitution if he knowingly causes, by any means, "a child younger than 18 years to commit prostitution." PENAL § 43.05. A person commits the act of prostitution by knowingly offering or agreeing to receive a fee from another to engage in sexual conduct. *Id.* § 43.02. By its clear, unambiguous language, a "child" protected by Section 43.05 is a person younger than eighteen. *Id.* § 43.05. Ordinarily, this would end our analysis, but recent judicial opinions require explicit clarification regarding the protection of children younger than fourteen under this statute.

In 2010, the Texas Supreme Court held that juvenile offenders younger than fourteen could not be prosecuted for committing prostitution. *In re B.W.*, 313 S.W.3d 818, 819, 826 (Tex. 2010). The court interpreted the legislature's unequivocal removal of the consent defense for sexual abusers of children under fourteen as a declaration that such young children could not consent to sexual conduct as a matter of law. *Id.* at 830 (citing PENAL § 22.011). It emphasized that "[c]hildren are the victims, not the perpetrators, of child prostitution." *Id.* at 826.

Conspicuously absent from *B.W.* is any implication that children under fourteen cannot be victims of sexual offenses. Rather, the question in *B.W.* was "whether the Legislature . . . intended to permit *prosecution* of a thirteen-year-old child for prostitution[,] considering its specific pronouncement that a child under fourteen is legally incapable of consenting to sex with an adult." *Id.* at 819 (emphasis added). Yet, the Fourteenth Court of Appeals, in misconstruing *B.W.*, applied a categorical rule that, factually, "children under 14 cannot consent to sex." *See, e.g.*, *Matter of T.V.T.*, 651 S.W.3d 1, 3 (Tex. App.—Houston [14th Dist.] 2019), *rev'd*, 675 S.W.3d 303 (Tex. 2023); *Turley*, 597 S.W.3d at 45. This holding ignores the

*B.W.* court's emphasis on the clear legislative intent to "provid[e] greater protection against sexual exploitation for underage children." *B.W.*, 313 S.W.3d at 821 (listing statutes imposing harsher punishments for offenders who commit sexual crimes against children, including "[c]ompelling a child under eighteen to commit prostitution").

Appellant urges that we apply and follow the Fourteenth Court of Appeals' logic in its *Turley* decision to find that, because K.F. was younger than fourteen when Appellant bribed her to perform sexual acts, she could not have legally committed any act of prostitution. *See Turley*, 597 S.W.3d at 30–45. In 2015, Andrew James Turley posted an online advertisement offering a sexual encounter with his four-year-old daughter, S.E.B., in exchange for a fee. *Turley*, 691 S.W.3d at 615, 620. Law enforcement responded to the advertisement and rescued the victim, who had been drugged with a sleep aid in the moments leading up to the planned sexual encounter. *Id.* at 618, 620 (Newell, J., concurring).

The Fourteenth Court of Appeals relied on *B.W.* to reverse Turley's conviction for compelling prostitution, finding that S.E.B., based on her age, "could not have *committed* prostitution because she lacked the mental capacity to consent to sexual conduct as a matter of law." *Turley*, 597 S.W.3d at 44 (emphasis added). Although that court distinguished between legally recognized consent and consent "as a factual matter," it concluded that S.E.B. was incapable of forming or "possess[ing] the requisite culpable mental state of the offense of prostitution." *Id.* at 43–44.

The Court of Criminal Appeals granted discretionary review, and likewise found the evidence of compelling prostitution insufficient; however, the court's determination was not based on S.E.B.'s age. *Turley*, 691 S.W.3d at 618–19. Rather, S.E.B. did not commit prostitution because, due to law enforcement's fortuitous intervention, no sexual conduct occurred. *Id.* 618–19. However, the court

7

reformed Turley's conviction to attempted compelling prostitution, noting that the victim's "culpability under the prostitution statute is immaterial." *Id.* at 619–20. Notably, the court observed that the compelling prostitution statute "focuses on [the appellant]'s conduct in causing another person to commit prostitution." *Id.* "In this sense," it continued:

> [Section 43.05] bears some similarities to Penal Code Section 7.01(a)(1), which focuses on an actor's responsibility for "*an offense* committed by the conduct of another" if he acts with the kind of culpability required for the offense and "causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense." This provision plainly recognizes that an actor may cause an innocent person to engage in conduct that constitutes "an offense," even if the innocent person lacks the requisite culpable mental state for the offense. Instead, that culpable mental state can be supplied by the person "causing" the other to engage in the conduct.

*Id.* (emphasis in original).

We agree that Section 43.05 should not be read so literally as to require proof that the child victim possessed the requisite culpable mental state—knowingly— under the prostitution statute. *See U.S. v. Brown*, 333 U.S. 18, 25–26 (1948) ("The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose."); *Ex parte Roemer*, 215 S.W.3d 887, 900–01 (Tex. Crim. App. 2007) (Cochran, J., dissenting) ("[T]he purposes in drafting a statute control their interpretation rather than the application of algebraic formulae."). And, because neither legal nor factual consent is an element of compelling prostitution of a child, misapplying *B.W.*'s holding to a child victim is, effectively, an unauthorized judicial revision of the statute. We cannot invade the province of the legislature by holding that sexual offenders who compel prostitution of children under fourteen may escape prosecution under the statute. *See* TEX. CONST. art. III, § 1; *see also Vandyke v. State*, 538 S.W.3d 561, 573 (Tex. Crim.

8

App. 2017) ("Our Constitution vests all lawmaking power in the Legislature of the State of Texas," which includes "the sole authority to establish criminal offenses and prescribe punishments.").

Finally, we note the important distinction made in *B.W.* between a person's commission of a crime and subsequent prosecution. We thought it self-evident that the two are not synonymous, as an exemption from prosecution does not dissolve one's actions. In fact, as applicable here, children would not need a judicially created bar to prosecution for acts that they are factually incapable of committing. In other words, young children can form an agreement to engage in sexual conduct in fact, but may not be prosecuted for prostitution. Conflating a prosecutorial bar with the inability of "our society's most vulnerable victims" to agree to engage in sexual conduct effectively "say[s] that a defendant should be rewarded because he picked a particular victim and crime." *Shumway v. State*, 663 S.W.3d 69, 79, 83 (Tex. Crim. App. 2022) (strict application of the corpus delicti rule not required in sexual assaults against preverbal young children).

Based on the aforementioned reasons, we conclude that the clear meaning of Section 43.05 does not foreclose Appellant's conviction. Appellant does not dispute the sufficiency of the evidence establishing that eleven-year-old K.F. submitted to his sexual advances in exchange for money and toys. Therefore, the evidence is sufficient to sustain Appellant's conviction for compelling prostitution. Accordingly, we overrule the issue raised in his motion for rehearing.

II. *Charge Error*

Because the resolution of Appellant's first and third issues are partially contingent upon whether there was error in the trial court's charge, we will address Appellant's fifth issue first. In Appellant's fifth issue, he asserts that the trial court's

charge impermissibly allowed a finding of guilt for continuous sexual abuse of a child, regardless of whether the alleged sexual acts occurred at least thirty days apart.

### A. *Standard of Review*

Reviewing claims of charge error is a two-step process. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). First, we must determine whether error exists. *Id.* Second, if there is error, we must decide whether the appellant was harmed and if the harm is sufficient to warrant reversal. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd). The applicable standard of review to be utilized for charge error depends on whether the claimed error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020).

The purpose of the trial court's charge "is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to the appropriate harm analysis. *See Bell*, 635 S.W.3d at 645.

B. *Split Among Intermediate Appellate Courts*

Appellant cites *Turner v. State*, 573 S.W.3d 455 (Tex. App.—Amarillo 2019, no pet.) to support the proposition that the charge erroneously permitted the jury to convict him of continuous sexual abuse of a child if it found that Appellant committed two or more acts within a thirty-day period, rather than at least thirty days apart. In *Turner*, the Seventh Court of Appeals criticized the language in Section 21.02 of the Penal Code in holding that the charge at issue was erroneous:

> [T]he State's argument relies too heavily upon the assumption that the statute itself is an example of clarity. Broken down into its component parts, the application paragraph used in this case does nothing more than . . . requir[e] that (1) *during* a given period of thirty days or more (2) the defendant intentionally or knowingly committed two or more acts of sexual abuse. While someone with an understanding of the statute might argue that this provision is clear, the express language used does not make it clear that the first and last acts must occur thirty or more days apart.

573 S.W.3d at 462.

The Sixth Court of Appeals aligns with the Seventh Court of Appeals in holding that the express language of the statute does not make clear that the first and last acts must occur thirty or more days apart. *See Lewis v. State*, No. 06-21-00021-CR, 2022 WL 630288, at *6 (Tex. App.—Texarkana Mar. 4, 2022, pet. ref'd) (mem. op., not designated for publication) ("[T]he jury could have easily read the instruction as directing it to find Lewis guilty if (1) there were thirty or more days between the dates in the indictment . . . and (2) during that time, Lewis sexually abused A.B. on two or more occasions."). In both *Lewis* and *Turner*, however, the courts found that the appellants were not egregiously harmed by the charge error.[3]

---

[3]The Tenth Court of Appeals assumed without deciding the question of error in a similar charge and held that the appellant "was not egregiously harmed by the purported error." *Carbajal v. State*, No. 10-

11

*Lewis*, 2022 WL 630288, at *6; *Turner*, 573 S.W.3d at 464. The First Court of Appeals in *Smith v. State*, 340 S.W.3d 41, 50–53 (Tex. App.—Houston [1st Dist.] 2011, no pet.) likewise held that the appellant was not egregiously harmed by the language: *"on or about the 1st day of December, 2007, through the 1st day of September, 2008, which said time period being a period that was 30 days or more in duration."*[4]

By contrast, the Third, Fourth, Fifth, Thirteenth, and Fourteenth Courts of Appeals have refused to find similar jury instructions erroneous. *See Jones v. State*, No. 05-22-00872-CR, 2024 WL 1757249, at *13–14 (Tex. App.—Dallas Apr. 24, 2024, no pet. h.) (mem. op., not designated for publication); *Perez v. State*, No. 13-22-00292-CR, 2024 WL 715326, at *5–7 (Tex. App.—Corpus Christi–Edinburg Feb. 22, 2024, no pet.) (mem. op., not designated for publication); *Lewis v. State*, No. 14-21-00691-CR, 2023 WL 4873306, at *5–8 (Tex. App.—Houston [14th Dist.] Aug. 1, 2023, pet. ref'd); *Hernandez-Silva v. State*, No. 03-19-00219-CR, 2020 WL 4726632, at *7–8 (Tex. App.—Austin Aug. 14, 2020, pet. ref'd) (mem. op., not designated for publication); *McKinney v. State*, No. 05-14-01350-CR, 2016 WL 3963369, at *16 (Tex. App.—Dallas July 18, 2016, pet. ref'd) (mem. op., not designated for publication); *Quintero v. State*, No. 04-13-00596-CR, 2015 WL 1914595, at *1–2 (Tex. App.—San Antonio Apr. 15, 2015, pet. ref'd) (mem. op., not designated for publication); *Knowles v. State*, No. 04-12-00180-CR, 2013 WL 1149063, at *5 (Tex. App.—San Antonio Mar. 20, 2013, pet. ref'd) (mem. op., not designated for publication).

---

22-00238-CR, 2023 WL 6158371, at *2–4 (Tex. App.—Waco Sept. 21, 2023, pet. ref'd) (mem. op., not designated for publication).

[4]The State concedes that the charge language was erroneous according to the cases cited by Appellant (*Smith, Turner,* and *Lewis*). However, as in those cases, Appellant was not egregiously harmed.

In *Lewis*, the Fourteenth Court of Appeals explained that the abstract paragraph of the charge at issue "follow[ed] the statutory text of [S]ection 21.02 almost verbatim." 2023 WL 4873306, at *7. The court explained:

> We do not believe this particular statutory text to be confusing, and we do not fault the trial judge for having followed it in instructing the jury. The Court of Criminal Appeals has interpreted section 21.02 as expressing legislative intent to "permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a single complaint, even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence, *so long as the jury members agree that at least two acts occurred during a period that is thirty or more days in duration*."

*Id.* (quoting *Price v. State*, 434 S.W.3d 601, 605–06 (Tex. Crim. App. 2014)). The court found that, because the legislature "has done nothing to amend the statute" to add any clarifying language, the challenged charge language is not erroneous. *Id.* at *7–8.

C. *Analysis*

With the question now before us, we agree with the majority of our sister courts that the challenged charge language is not erroneous. First, unlike the charge language in *Turner*, the language "during a period that is thirty or more days in duration" in this charge refers to "commit[ting] two or more acts of sexual abuse." Consequently, the charge expressly requires a finding that Appellant, during a period that is thirty or more days in duration, committed two or more acts of sexual abuse. *See Jones*, 2024 WL 1757249, at *14. The charge, therefore, follows the statutory structure of the offense, and tracks the language of the relevant code provisions. *See* PENAL § 21.02(b), (d).

Furthermore, we emphasize that "it is the function of the charge to lead and to prevent confusion." *Reeves v. State*, 420 S.W.3d 812, 818 (Tex. Crim. App. 2013) (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)). We agree

13

that "[a] charge will not prevent confusion if the statutory text on which it is based has a variable meaning in the eyes of the jury." *Navarro v. State*, 469 S.W.3d 687, 699 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Hence, "a jury charge may properly include definitions for nonstatutorily defined terms that have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words used have a well-known common law meaning." *Beltran De La Torre v. State*, 583 S.W.3d 613, 618 (Tex. Crim. App. 2019) (internal quotation marks omitted).

But "*possible* jury confusion" does not justify the submission of a special, nonstatutory instruction "based on the speculative assertion that jurors will not apply the statutory definition . . . as it is written." *Id.* at 620 (emphasis added). It is the trial court's paramount duty to "maintain neutrality in providing such information and guidance" in its charge, above any subjective desire for extratextual clarification. *Id.* at 617. Article 36.14 prohibits the charge from "expressing any opinion as to the weight of the evidence," and is designed to accomplish this neutrality. *See* CRIM. PROC. art. 36.14. Generally, a charge that tracks the statutory language is not erroneous. *See Casey v. State*, 215 S.W.3d 870, 887 (Tex. Crim. App. 2007).

A nonstatutory instruction, even if facially neutral and legally accurate, may nevertheless constitute an improper comment on the weight of the evidence.[5] *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012). Such an instruction

---

[5]In *Kirsch*, the Court of Criminal Appeals determined that a trial court's definition of "operate," a nonstatutorily defined term, in the charge regarding driving while intoxicated constituted an impermissible comment on the weight of the evidence. 357 S.W.3d at 652; *see also Beltran De La Torre*, 583 S.W.3d at 619–20 (special, nonstatutory jury instructions defining "mere presence" and "joint possession" were unnecessary to clarify the applicable law, and drew the jury's attention to evidence supporting a particular party's theory of the case); *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015) (trial court erred by including definitions for the terms "penetration" and "female sexual organ" in its instructions to the jury in an aggravated-sexual-assault trial).

becomes an impermissible comment on the evidence if it: (1) is not grounded in the Penal Code; (2) is covered by the general charge to the jury; and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense. *Beltran De La Torre*, 583 S.W.3d at 617. A trial court should, therefore, "avoid any allusion in the jury charge to a particular fact in evidence, as the jury might construe this as judicial endorsement or imprimatur." *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008).

Given the rules designed to prevent a jury's misinterpretation, expounding on the language, "during a period that is thirty days or more in duration," in the trial court's charge may constitute an impermissible comment on the weight of the evidence. This case does not present a scenario in which nonstatutorily defined terms "have a known and established *legal* meaning, or which have acquired a peculiar and appropriate meaning in the law." *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015) (emphasis added) (quoting *Kirsch*, 357 S.W.3d at 650). Additional instructions regarding the thirty-day period were unnecessary because "the general charge left ample room for the parties to argue" the range of dates for the predicate offense(s), and the statutory language made the legal requirements sufficiently clear without further instructions. *See Beltran De La Torre*, 583 S.W.3d at 619.

We conclude that the trial court's charge in this case that tracked the language of the statute was not erroneous. To hold otherwise would be calling for an invasive judicial rewrite of a statute whose plain language is clear. *See State v. Johnson*, 475 S.W.3d 860, 872 (Tex. Crim. App. 2015).

### D. *No Egregious Harm*

Even assuming that the position adopted by a minority of our sister courts is legally correct, and that the trial court erred by failing to instruct the jury regarding

the minimum thirty-day period as argued by Appellant, we agree that Appellant did not suffer egregious harm as a result.

The harm analysis for charge errors depends on whether the defendant timely objected to the alleged error. *See Campbell*, 664 S.W.3d at 245; *Reeves*, 420 S.W.3d at 816 (Tex. Crim. App. 2013). Where, as here, there was no timely objection, Appellant must show that he suffered egregious harm. *Cyr*, 665 S.W.3d at 556. An erroneous charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). Egregious harm is a difficult standard to meet, as it must be based on "actual harm rather than theoretical harm," and the analysis is a fact-specific one. *Id.* (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)); *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). Harm is assessed in light of: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of the probative evidence; (3) counsel's arguments; and (4) any other relevant information revealed by the record as a whole. *Alcoser*, 663 S.W.3d at 165 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).

### 1. *The Charge as a Whole*

The first *Almanza* factor requires that we review the trial court's charge in its entirety. *Arevalo v. State*, 675 S.W.3d 833, 854 (Tex. App.—Eastland 2023, no pet.) (citing *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999)). Appellant's complaint is that the charge, which tracked the language of the applicable statute, authorized a conviction for predicate acts committed fewer than thirty days apart. An application paragraph that tracks the language of the statute is generally not egregiously harmful. *See id.* at 854–55. The application paragraph in this case, in

relevant part, instructed the jury to determine beyond a reasonable doubt whether the evidence showed that Appellant:

> on or about between the 1st day of August, 2017 and 20th day of April, 2021 in the County of Midland and State of Texas as charged in the indictment did then and there during a period of 30 days or more in duration, when [Appellant] was 17 years of age or older, intentionally or knowingly commit two or more acts of sexual abuse against [K.F.]

The application paragraph and the abstract paragraph tracked the statutory language requiring two or more acts of sexual abuse "during a period of [thirty] days or more in duration." Therefore, the charge, when read in its entirety and in proper context, does not weigh in favor of finding that Appellant suffered egregious harm. *See id.* at 855.

### 2. *State of the Evidence*

The second *Almanza* factor focuses on the evidence presented at trial. *Id.* The evidence, as summarized above, shows that Appellant began sexually assaulting nine-year-old K.F. in early 2019, when she was in the third grade. K.F. recalled that it was "[w]hen [the Department] was involved," while she was placed with Appellant and his grandmother. Since then, Appellant "put his private on [hers]" and made her "suck his private" "[m]ore than one time." "[Appellant] would bribe" her with money, "[a] piano[,] [a] My Life As Kitchen[,] [a]nd some other things." For the piano, specifically, K.F. had to let Appellant "put his [private] on [hers]." And in September of 2020, shortly before her eleventh birthday, Appellant "bribed [her] with one of [her] presents" in exchange for sexual acts. The last time Appellant made K.F. "suck his private" was when her mother was at work on the morning of April 20, 2021.

Appellant's defensive strategy was to deny the allegations entirely and assert that he gave K.F. the money for chores. For example, Appellant told the jury that

he was not "a fan of oral sex," and was never alone with K.F. other than to "[b]riefly" tuck her into bed. He then attributed K.F.'s "pretty graphic detail" to "somebody teach[ing] her that." Because K.F.'s credibility, not the timeline of sexual abuse, was the central issue at trial, the outcome would not likely have been different even if further clarification regarding the minimum thirty-day period had been provided. *See Alcoser*, 663 S.W.3d at 170. This factor weighs against a finding of egregious harm. *See id.*

### 3. *Arguments of Counsel*

When considering the third *Almanza* factor, we must determine whether any statements made by the State, Appellant's trial counsel, or the trial court exacerbated or ameliorated the complained-of charge error. *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015). Here, the State laid out the timeline: the sexual abuse began in 2019 "when [the Department] got involved," and reiterated that Appellant committed "two or more acts of sexual abuse . . . over the period of [thirty] days." To illustrate the thirty-day requirement, the prosecutor posed the following questions for the jury's consideration:

> [D]id [Appellant] commit aggravated sexual assault or indecency two or more times over the period of [thirty] days? . . . Did he make her suck his private one time? Thirty days before that did he make her suck his private? Did he put his private on her private? We have plenty of evidence that this happened over the course of [thirty] days.

Appellant's trial attorneys did not contest the chronology. Instead, they discussed dates and times in the context of attacking K.F.'s and L.B.'s credibility. According to Appellant's trial theory, K.F. fabricated the allegations against Appellant at L.B.'s behest because L.B. "ha[d] a gripe against" Appellant and the Department. He also criticized the police investigation, pointed to other possible perpetrators, and argued that family turmoil was a motive for K.F. to lie. Appellant's closing concluded with

18

a "demand that [the jury] not convict innocent people . . . not saddle them for the rest of their lives with a felony conviction and everything else that goes along with [it]."

Despite Appellant's declaration of innocence, the jury determined beyond a reasonable doubt that Appellant committed two or more acts of sexual abuse against K.F., a child under fourteen, during a period that is thirty or more days in duration. An instruction expounding on the language, "during a period that is thirty days or more in duration," especially considering the arguments of counsel, would not have affected the outcome of trial. Therefore, this factor weighs against a finding of egregious harm.

### 4. *Any Other Relevant Information*

The fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm as a result of the alleged error. *Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171.

During jury selection, the State explained that to prove Appellant committed continuous sexual abuse of a child:

> We have to prove that at least two incidents happened [thirty] days or more apart. So if it's within [thirty] days, we didn't meet that element. If it's over [thirty] days, we did. And so you can have evidence of other acts within that, but there have to be at least two that are over that [thirty] days.

On this record, we conclude that the lack of clarifying language regarding the thirty-day period did not vitally affect Appellant's defensive theory, the very basis of his case, or deprive him of a valuable right. *See Alcoser*, 663 S.W.3d at 165, 171. Consequently, he was not egregiously harmed by the lack of a clarification instruction. *See id.* We overrule Appellant's fifth issue.

19

III. *Denial of Motion for New Trial & Ineffective Assistance of Counsel*

Appellant contends in his first issue that the trial court erroneously denied his motion for new trial because the State failed to disclose exculpatory evidence, and he received ineffective assistance of counsel. Appellant's third issue sets forth additional allegations of trial counsel's deficient performance in an ineffective-assistance-of-counsel claim. Because they overlap, we address Appellant's first and third issue together.

A. *Standard of Review*

We review a denial of a motion for new trial under an abuse of discretion standard. *Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024). "Under the abuse of discretion standard, we do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* (citing *Coyler v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014)). A trial court abuses its discretion when no reasonable view of the record could support its ruling. *Id.*; *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017).

Under this deferential standard, "the trial judge has 'the right to accept or reject any part' of a witness's testimony when ruling on a motion for new trial." *Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021) (quoting *Beck v. State*, 573 S.W.2d 786, 791 (Tex. Crim. App. 1978)); *Coyler*, 428 S.W.3d at 126. The trial court is the exclusive judge of the credibility of the evidence presented in connection with a motion for new trial. *Najar*, 618 S.W.3d at 371–72. "We afford almost total deference to a trial court's fact findings, view the evidence in the light most favorable to the trial court's ruling, and reverse the ruling only 'if no reasonable view of the

record could support' it." *Id.* at 371 (quoting *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013)).

### B. *Failure to Disclose Exculpatory Evidence*

The State shall, "as soon as practicable after receiving a timely request," disclose all "evidence material to any matter involved in the action" that is in its "possession, custody, or control of the state or any person under contract with the state," and is "not otherwise privileged." CRIM. PROC. art. 39.14(a). Article 39.14(h) further places upon the State the free-standing duty to disclose "any exculpatory, impeachment, or mitigating" evidence "that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." *Id.* art. 39.14(h); *see Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021). It creates an "independent and continuing duty for prosecutors to disclose evidence that may be favorable to the defense even if that evidence is not 'material.'" *Watkins*, 619 S.W.3d at 277.

The baseline inquiries for determining a violation under Article 39.14 are: (1) whether the State failed to disclose evidence (that was not work product or otherwise privileged); (2) whether the withheld evidence was favorable to the defendant; and (3) whether the evidence was material. *Fortuna v. State*, 665 S.W.3d 861, 867 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (citing *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) (setting out the *Brady* three-prong test)); *see also Watkins*, 619 S.W.3d at 290. "The remedy for a disclosure violation is a new trial." *Fortuna*, 665 S.W.3d at 867 (citing *Ex parte Miles*, 359 S.W.3d 647, 664 (Tex. Crim. App. 2012)). However, the failure to disclose evidence is subject to a harm analysis. *Watkins*, 619 S.W.3d at 269, 291; *see Williamson v. State*, No. 04-20-00268-CR, 2021 WL 4976326, at *3 (Tex. App.—San Antonio Oct. 27, 2021, pet. ref'd) (mem. op., not designated for publication) (performing harm analysis

following holding in *Watkins*). "[W]hen only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis." *Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005); *see Williamson*, 2021 WL 4976326, at *3–4 (applying TEX. R. APP. P. 44.2(b) harm analysis to an Article 39.14 violation); *Branum v. State*, 535 S.W.3d 217, 225–26 (Tex. App.—Fort Worth 2017, no pet.) (same); *Ziegler v. State*, No. 04-15-00559-CR, 2016 WL 5795208, at *2 (Tex. App.—San Antonio Oct. 5, 2016, no pet.) (mem. op., not designated for publication) (same). Rule 44.2(b) requires reviewing courts to disregard any nonconstitutional errors that do not affect an appellant's substantial rights. TEX. R. APP. P. 44.2(b).

Appellant alleges that the State failed to disclose the Department's notes from L.B.'s and R.P.'s interviews conducted on April 28, 2021. However, it was established at the hearing on the motion for new trial that the interview notes were in the records disclosed to trial counsel on September 8, 2021. If any additional TDFPS records existed, Appellant did not present them at the hearing on the motion for new trial. Because the records at issue were in fact made available to Appellant's counsel in September of 2021, and any additional records were not presented during the evidentiary hearing, Appellant failed to show that the State withheld material or exculpatory information.

Having found that the evidence Appellant alleges that the State failed to disclose was in fact made available nearly a year prior to trial, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for new trial on this ground.

### C. *Ineffective Assistance of Counsel*

In Appellant's first and third issues, he claims that trial counsel was ineffective for failing to: (1) "subpoena the complainant's brother, [R.P.] . . . and

22

present his testimony to the jury in [Appellant]'s defense"; (2) "subpoena the [TDFPS] records"; (3) "request[] a continuance at the time of the late disclosure of the [TDFPS] records"; (4) "investigate and present testimony from [R.P.] to contradict the testimony" of K.F. and L.B.; (5) "object to the testimony of more than one outcry witness as hearsay resulting in improper bolstering of K.F.'s testimony"; (6) "object to the State's bolstering of the complaining witness's testimony"; and (7) object to the trial court's charge. We address each complaint in turn.

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that: (1) his trial counsel rendered deficient performance in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023). "Failure to succeed on either prong is fatal to the ineffectiveness claim." *Lane*, 670 S.W.3d at 671.

An attorney is deficient if his performance falls below an objective standard of reasonableness under the prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation. *Id.* (citing *Strickland*, 466 U.S. at 687–88, 690). "There is 'a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (quoting *Strickland*, 466 U.S. at 689).

"Claims of ineffective assistance must be firmly rooted in the record." *Hart*, 667 S.W.3d at 782. "Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Id.* (quoting *Scheanette v.*

*State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)). Counsel's actions are deficient only if the reviewing court finds that "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

In assessing whether counsel's performance fell below an objective standard of reasonableness, we must look to the record for any strategic motive for counsel's actions. *See Strickland*, 466 U.S. at 687–88; *Okonkwo*, 398 S.W.3d at 693. On a silent record, a reviewing court may only find ineffective assistance of counsel if the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[I]n the absence of evidence of counsel's reasons for the challenged conduct, an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it.") (quoting 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.10(c) (2d. ed 1999)).

"Prejudice may be measured in one of two ways: a reasonable probability of a different outcome or a reasonable probability of a different decision by the defendant." *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022) (citing *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018)). "Choosing between the two depends on the possible result of the deficient performance." *Id.* "For example, if the deficient performance pertained to a guilty verdict, then prejudice would depend on a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* (quoting *Strickland*, 466 U.S. at 695). "The different-outcome question is relevant only to the extent that it

sheds light on whether the deficient performance affected the defendant's decision making." *Id.* (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000)).

An ineffective-assistance claim may be raised in a motion for new trial. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Where, as here, ineffective-assistance-of-counsel claims are raised in a motion for new trial, rejected, and reasserted on appeal, "we analyze the ineffective assistance of counsel issue as a challenge to the denial of the motion for new trial." *Minassian v. State*, 490 S.W.3d 629, 641 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (internal quotation marks omitted). We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *State v. Arizmendi*, 519 S.W.3d 143, 148 (Tex. Crim. App. 2017). In this regard, a trial court abuses its discretion when "no reasonable view of the record could support the trial court's ruling." *Collier v. State*, 528 S.W.3d 544, 546 (Tex. App.—Eastland 2016, pet. ref'd).

### 1. *Failure to call R.P. & Jolea Pogue*

Appellant argues that his trial attorneys were ineffective for failing to "subpoena [R.P.]," and for failing to "investigate and present testimony from [R.P.]" to contradict K.F.'s and L.B.'s version of events. According to the TDFPS records disclosed on September 8, 2021, Jolea Pogue, a TDFPS representative, interviewed seven-year-old R.P. on April 28, 2021 and wrote a summary that stated:

> I asked [R.P.] if [Appellant] gives [K.F.] dolls, [R.P.] stated "we usually buy our own toys because we have money. I asked [R.P.] why he has money, [R.P.] stated "cause we help around the house." I asked [R.P.] who gives him this money . . . [R.P.] stated "usually mom and dad." I asked [R.P.] if [Appellant] and Mom give them money to do chores, [R.P.] stated "after we done our chores."

Appellant testified at trial that he gave K.F. and R.P. "money for doing chores and getting their homework done." He contends that R.P.'s testimony, or Pogue's testimony detailing R.P.'s interview, would have supported his defense.

25

A claim of ineffective assistance based on trial counsel's failure to call witnesses cannot succeed absent a showing that the witnesses were available to testify, and that their testimony would have benefitted the defendant. *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). "'It is not enough to show that trial counsel's errors had some conceivable effect on the outcome' of the proceeding." *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012) (quoting *Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012)).

Both trial attorneys, Spector and Phillips, explained that they made a strategic decision not to call R.P. Spector testified that she "[did not] know that [R.P.] would have directly contradicted [K.F.]," nor whether his testimony "would have really made an impact with that jury" after K.F.'s "devastating" testimony. Phillips echoed Spector's concerns about the "high risk" of calling a child witness, especially given K.F.'s "credible" testimony. Although "[c]ounsel's conscious decision not to pursue a defense or to call a witness is not insulated from review," Appellant must overcome the strong presumption that such "virtually unchallengeable" strategic decisions were "made after thorough investigation of law and facts relevant to plausible options." *Ex parte Flores*, 387 S.W.3d at 633 (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

According to Appellant, now with the benefit of hindsight, he would have pursued a different tactic at trial. Appellant claims that if R.P. had denied telling Pogue that Appellant gave him and K.F. money for chores, "counsel could have placed Jolea Pogue on the stand to impeach him if she had been subpoenaed." First, Spector explained that she could not locate Pogue, who had apparently moved outside of Texas. Second, even if Pogue was available, "[t]he mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel." *Ex parte Jimenez*, 364 S.W.3d 866, 883

26

(Tex. Crim. App. 2012). We reemphasize that "[t]he *Strickland* test is judged by the totality of representation, not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Id.* (internal quotation marks omitted).

Moreover, we observe that Appellant, when given the opportunity to prove this contention at the hearing on the motion for new trial, called neither R.P. nor Pogue as witnesses, nor did he provide sworn affidavits from them. And even if we were to assume that R.P. or Pogue corroborated that Appellant gave K.F. and R.P. money for chores, such evidence would merely have been cumulative of other testimony already elicited through Appellant and L.B. *See Wong v. Belmontes*, 558 U.S. 15 (2009) (failing to introduce cumulative evidence at trial does not give rise to *Strickland* prejudice); *Ex parte Flores*, 387 S.W.3d at 638 & n.53 (counsel was not ineffective for failing to call an additional medical examiner to offer an ultimate conclusion that "was no different from, and provided nothing more than" the other testifying doctor); *Wexler v. State*, 593 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2019), *aff'd*, 625 S.W.3d 162 (Tex. Crim. App. 2021); *Tutt v. State*, 940 S.W.2d 114, 121 (Tex. App.—Tyler 1996, pet. ref'd); *Rector v. State*, No. 07-22-00063-CR, 2023 WL 2245127, at *4 (Tex. App.—Amarillo Feb. 27, 2023, no pet.) (mem. op., not designated for publication); *Sincere v. State*, No. 11-11-00056-CR, 2013 WL 870686, at *3 (Tex. App.—Eastland Mar. 7, 2013, no pet.) (mem. op., not designated for publication).

Appellant has consequently failed to present evidence that their testimony would have aided his defense, and we cannot speculate as to what they might have said. Accordingly, we cannot conclude that Appellant's attorneys were ineffective for failing to call Pogue or R.P. *See Ramirez*, 280 S.W.3d at 853 (concluding that

27

the applicant's claim that an uncalled witness would have benefitted his defense was "based on pure speculation"); *Sincere*, 2013 WL 870686, at \*3.

### 2. *Failure to Subpoena TDFPS Records & Request a Continuance*

Appellant next avers that his counsel was ineffective for failing to subpoena TDFPS records until the day of trial, and for failing to request a continuance based on the late disclosures of additional TDFPS records.

We recognize that counsel has a duty to conduct a reasonable investigation or to reasonably decide that certain investigations are unnecessary. *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006) (citing *Wiggins*, 539 U.S. at 527). When assessing the reasonableness of an attorney's investigation, a reviewing court must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to continue investigating. *Id.* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Ex parte Bowman*, 533 S.W.3d 337, 350 (Tex. Crim. App. 2017) (quoting *Strickland*, 466 U.S. at 690).

Additionally, to show that trial counsel performed deficiently for failing to request a continuance, an appellant must demonstrate that the trial court would have abused its discretion in denying a properly filed written motion for continuance. *See Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Richardson v. State*, 606 S.W.3d 375, 384 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). Appellant's counsel filed a written and verified motion for continuance four days before trial, citing the recent discovery of "a sizable volume of [TDFPS] records," as well as a scheduling conflict for a defense witness.

Appellant failed to show at the hearing on his motion for new trial what records were discovered shortly before trial, and he continues to operate under the incorrect assumption that the interview notes at issue were not disclosed until a week

before trial. However, as established, that evidence was made available to the defense nearly a year prior to trial. As such, we conclude that Spector and Phillips conducted a reasonable investigation, and the trial court did not abuse its discretion in so finding. We also cannot say that the trial court would have abused its discretion in denying the requested continuance, as Appellant has failed to carry his burden of showing that any TDFPS records discovered shortly before trial would have led to a different outcome at trial.

### 3. *Failure to Object to Multiple Outcry Witnesses*

Appellant argues that trial counsel's failure to object to the designation of L.B. and T.B. as outcry witnesses constitutes deficient performance.

"The failure to object to proper questions and admissible testimony . . . is not ineffective assistance." *Jimenez*, 364 S.W.3d at 887. When alleging ineffective assistance of counsel based on the failure to object, an appellant must demonstrate that the trial court would have erred in overruling an objection had trial counsel made one. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Munoz v. State*, No. 11-13-00139-CR, 2015 WL 4053483, at *5 (Tex. App.—Eastland June 30, 2015, pet. ref'd) (mem. op., not designated for publication).

Article 38.072 of the Texas Code of Criminal Procedure allows the admission of a hearsay statement made to an outcry witness by certain victims of sexual abuse, including child victims of a sexual offense. CRIM. PROC. art. 38.072 (West Supp. 2023). The outcry witness is the first person that is eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *Id.* "The statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernible manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88,

29

91 (Tex. Crim. App. 1990)). "Hearsay testimony from more than one outcry witness may be admissible under Article 38.072 only if the witnesses testify about different events," as there may be only one outcry witness per event. *Id.*

First, the record is silent as to trial counsel's reasons for the lack of any objection. The record could have been supplemented during the hearing on Appellant's motion for new trial, but Appellant did not produce additional information about trial counsel's explanation for not objecting to T.B. and L.B. as outcry witnesses. Appellant has thus failed to meet his burden under the first prong of *Strickland*, and the trial court did not err in finding otherwise. *See Lopez*, 343 S.W.3d at 143–44.

Second, even had trial counsel objected, the trial court would not have abused its discretion in overruling the objection. After L.B. found money in K.F.'s room, K.F. revealed to L.B. that Appellant gave her the money in exchange for oral sex. At T.B.'s home later that evening, K.F. told T.B. more details: Appellant would "brib[e] her into doing things," "he had her put her mouth over his penis," and "he put his private into her at one time." L.B. was present for this conversation but testified that K.F. "told [her] mother more" than K.F. initially divulged to her. We conclude that, in accordance with Article 38.072, L.B. and T.B. testified about different events; therefore, the trial court would not have abused its discretion in overruling an objection to L.B. and T.B. as outcry witnesses. *See, e.g.*, *Dority v. State*, 631 S.W.3d 779, 790–91 (Tex. App.—Eastland 2021, no pet.); *Rosales v. State*, 548 S.W.3d 796, 807 (Tex. App.—Houston [14 Dist.] 2018, pet. ref'd) (trial court did not abuse its discretion in holding that mother was the proper outcry witness regarding appellant putting his penis in complainant's mouth, and another outcry witness was proper regarding complainant's statement that defendant put his penis in her anus). As such, trial counsel's failure to object does not constitute

deficient performance. *See Jimenez*, 364 S.W.3d at 887; *Lopez*, 343 S.W.3d at 143–44.

### 4. *Failure to Object to "Bolstering"*

Appellant argues that his trial counsel was ineffective for failing to object to questions asked by the State as "bolstering." In particular, Appellant challenges the State's questioning of: (1) L.B. as to whether she could "think of any reason why [K.F.] would" fabricate the allegations; (2) Investigator Steve Skaggs on cross-examination regarding whether he observed signs that K.F. was "coach[ed]" to lie; and (3) Dr. Aaron Pierce, an expert called by trial counsel, about general tendencies of children to fabricate sexual assault allegations.

"Bolstering" existed before the Texas Rules of Evidence were adopted, and the term itself did not survive the adoption. *Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009). The Court of Criminal Appeals has defined "bolstering" as evidence for which the *sole* purpose is to "convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Id.* (quoting *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993)).

"The objection of 'bolstering' is archaic in Texas trial practice and has been criticized as no longer adequate to preserve error." *McQueen v. State*, No. 11-21-00098-CR, 2022 WL 16984292, at *5 (Tex. App.—Eastland Nov. 17, 2022, no pet.) (mem. op., not designated for publication) (citing *Cohn*, 849 S.W.2d at 821 (Campbell, J., concurring)). Improper bolstering occurs when one item of evidence is improperly used by a party to add credence or weight to an earlier piece of relevant unimpeached evidence offered by the *same* party. *Valcarcel v. State*, 765 S.W.2d 412, 415 (Tex. Crim. App. 1989). Evidence that rehabilitates an impeached witness,

of course, is not bolstering. *Cohn*, 849 S.W.2d at 819 n.5. And evidence that corroborates a witness's account or enhances inferences to be drawn from another source of evidence, "in the sense that it has an incrementally *further* tendency to establish a fact of consequence," is likewise not considered to be bolstering. *Id.* at 820.

In this case, none of the challenged testimony amounted to improper "bolstering." The State did not ask L.B. to directly opine on K.F.'s truthfulness, and did not ask whether L.B. had any personal knowledge of a motive by K.F. to lie about Appellant sexually assaulting her. *See Shaw v. State*, 329 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("In a case involving the sexual abuse of a child, a fact of consequence to the determination of the action includes whether the child was actually abused."). "[T]he question was open-ended," which gave L.B. the opportunity to either indirectly support or cast doubt on the truthfulness of K.F.'s allegations. *See Schutz v. State*, 957 S.W.2d 52, 74 (Tex. Crim. App. 1997). That she could not fathom why K.F. would fabricate the allegations does not render her testimony improper bolstering, as it only had "an incrementally *further* tendency to establish a fact of consequence." *Cohn*, 849 S.W.2d at 820.

Investigator Skagg's and Dr. Pierce's challenged testimony was presented during cross-examination by the State, only after Appellant's trial counsel put K.F.'s credibility at issue numerous times throughout the trial. Specifically, Appellant's trial counsel asked L.B. about her divorce from Appellant and the child custody orders, and then argued that it was relevant to "motive as to why [K.F.] would make accusations." Therefore, the State was entitled to question Appellant's witnesses about K.F.'s truthfulness to rebut Appellant's trial attorneys' prior impeachment efforts. *See, e.g.*, *Nassouri v. State*, 503 S.W.3d 416, 420 (Tex. App.—San Antonio 2016, no pet.) ("[trial] counsel opened the door to the State's redirect examination

and subsequent rehabilitation of its witness, regarding whether the victim's testimony was truthful or fabricated").

The challenged exchange between the State and Skaggs immediately followed trial counsel's questions:

> [TRIAL COUNSEL]: Okay. Are you familiar with the term 'coaching' where a parent or somebody sort of pushes and tells another person what to say? Are you familiar with that?
>
> [SKAGGS]: Yes, I am.
>
> [TRIAL COUNSEL]: And sometimes with these cases, those things happen, correct?
>
> [SKAGGS]: Sometimes they do.

On cross-examination, the State followed up on trial counsel's questions about coaching: "In this case, based off your training and experience, were there any red flags for you as far as coaching for this case?" Skaggs replied that he "did not feel like there was any coaching" in this particular case. Because the testimony, in context, was relevant to rebut Appellant's implication that K.F. was coached or manipulated, it was not bolstering. *See Cohn*, 849 S.W.2d at 819 n.5. Accordingly, any objection would have properly been overruled. Appellant has failed to show that his trial counsel performed deficiently by not objecting. *See Jimenez*, 364 S.W.3d at 887.

With respect to the State's cross-examination of Dr. Pierce, when read in context, it is clear that such questioning was in response to direct examination. Expert testimony that is relevant as substantive evidence is admissible, regardless of whether "it serves some rehabilitative function." *Cohn*, 849 S.W.2d at 819. More precisely, "[t]he key to admissibility remains the same [in] these cases: the expert witness must be qualified in their field, use tools and methods from their field, draw conclusions based on those qualifications and methods, and not comment on victim

credibility." *Moreno v. State*, 619 S.W.3d 754, 762 (Tex. App—San Antonio 2020, no pet.).

On direct examination, Dr. Pierce cast doubt on K.F.'s accusations by detailing his "concerns" about the investigation and interviews in this case and described how false claims of child sexual abuse arise. The State was entitled to rebut any implications that K.F. was coached, manipulated, or lying, and it did not elicit a direct comment on the truth of K.F.'s allegations. *See Schutz*, 957 S.W.2d at 69–71. Hence, Appellant's "bolstering" complaint is meritless, and the trial court would not have abused its discretion in overruling any objection, if made, to the challenged questions. Accordingly, Appellant failed to demonstrate that he received inadequate assistance of counsel by the "failure" of his counsel to object to that testimony.

### 5. *Failure to Object to the Trial Court's Charge*

Finally, Appellant asserts that trial counsel was ineffective for failing to object to the same charge language that he contested in his fifth issue on appeal. Having found no error in or harm resulting from the trial court's charge, we conclude that trial counsel was not ineffective for failing to object, as Appellant suggests.

### 6. *Cumulative Error*

If an appellant's individual points of error lack merit, there is no possibility of cumulative error. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009) ("Though it is possible for a number of errors to cumulatively rise to the point where they become harmful, we have never found that 'non-errors may in their cumulative effect cause error.'") (quoting *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999)). Because Appellant has failed to carry his burden of proving that trial counsel was ineffective in any respect, he has failed to show that there is a

possibility of cumulative error. *See id.*; *Holbert v. State*, 665 S.W.3d 120, 126–27 (Tex. App.—Amarillo 2023, pet. ref'd).

### D. *Conclusion*

In sum, we conclude that Appellant has not met his burden under the first *Strickland* prong of showing that his trial attorneys' representation fell below an objective standard of reasonableness. He has also failed to demonstrate that the State withheld material evidence. Therefore, the trial court did not abuse its discretion by denying Appellant's motion for new trial. We overrule Appellant's first and third issues.

### IV. *Exclusion of L.B.'s Pending Felony*

Appellant asserts in his fourth issue that the trial court erroneously excluded evidence of L.B.'s pending felony charge at the time she testified. Appellant argues that this violated Appellant's rights under the Confrontation Clause.

### A. *Evidentiary Standard of Review & Confrontation Clause*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). This standard also applies to a trial court's decision to admit or exclude extraneous-offense evidence. *Perkins v. State*, 664 S.W.3d 209, 216–17 (Tex. Crim. App. 2022); *Arevalo*, 675 S.W.3d at 843. The trial court's decision will be upheld as long as it was within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018) (quoting *McGee v. State*, 233 S.W.3d 315 (Tex. Crim. App. 2007)). We will not reverse a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "[T]he Confrontation Clause occasionally may require the admissibility of evidence that the Rules of Evidence would exclude." *Henley*, 493 S.W.3d at 95 (quoting *Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000)); *see also* TEX. R. EVID. 608(b) ("Except for a criminal *conviction* under Rule 609, a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness.") (emphasis added); *see* TEX. R. EVID. 609 (permitting admission of a witness's criminal *conviction* if "the crime was a felony or involved moral turpitude" under certain circumstances). Indeed, a felony indictment is not a conviction under Rule 609 and a misdemeanor conviction would only be admissible if it "involved moral turpitude." *See* TEX. R. EVID. 609(a).

But encompassed in the Confrontation Clause is the right of the accused to cross-examine witnesses against him. *Henley*, 493 S.W.3d at 95. Confrontation Clause violations are assessed on a case-by-case basis. *Id.* "In determining whether evidence must be admitted under the Confrontation Clause, the trial court must balance the defendant's right to cross-examine and the probative value of the proffered evidence against the risk factors associated with admission of the evidence." *Id.* "The trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Id.*; *Lopez*, 18 S.W.3d at 222.

B. *Preservation*

During cross-examination, trial counsel attempted to introduce evidence of L.B.'s misdemeanor conviction for driving while intoxicated (DWI), and her

pending felony indictment for possession of a controlled substance from January of 2022. The trial court excluded evidence of both offenses. The following day, Appellant's trial counsel made an offer of proof, during which they introduced the misdemeanor judgment but did not reoffer evidence of the pending felony charge. At no time was the Confrontation Clause raised as grounds for admissibility.

To preserve a complaint for appellate review, the complaining party must lodge a timely complaint with the trial court that states the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1. "The purpose of requiring [an] objection is to give the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (quoting *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000)). Confrontation Clause complaints are subject to the same rules of preservation. *See id.*

Here, Appellant "did not argue that the Confrontation Clause demanded admission" of L.B.'s criminal conduct. *See id.* Appellant asserted that the DWI conviction was relevant because L.B. "ran into . . . a fence" and "left the scene," and "brought the cocaine back to the jail" after she was arrested for the DWI. "While no 'hyper-technical or formalistic use of words or phrases' is required in order to preserve error, the proffering party must 'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018) (quoting *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012)). Because nothing in the record indicates that Appellant properly put the trial court on notice that he was making a Confrontation Clause argument in support of admitting the excluded

37

evidence, the trial court did not "have the chance to rule on the specific constitutional basis for admission." *See id.* Therefore, Appellant failed to preserve his fourth issue for our review.

C. *Analysis*

Even had Appellant preserved his complaint for review, we discern no abuse of discretion in the trial court's exclusion of L.B.'s pending felony charge.

"[T]he accused is not entitled to 'cross-examination that is effective in whatever way, and to whatever extent,' he might wish." *Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). When a defendant "seeks to 'impeach a witness with evidence of pending criminal actions,'" the trial court has the discretion "to place limits on those areas of cross-examination in which the defendant fails to 'establish some causal connection or logical relationship between the pending charges'" and "the allegation of bias." *Id.* (quoting *Carpenter v. State*, 979 S.W.2d 633, 634–35 (Tex. Crim. App. 1998)).

As an initial matter, although Appellant does not raise the exclusion of L.B.'s DWI conviction, we note that it is not a crime of moral turpitude. *See Janecka v. State*, 937 S.W.2d 456, 464 (Tex. Crim. App. 1996); *Davis v. State*, 545 S.W.2d 147, 150 (Tex. Crim. App. 1976). And it is undisputed that L.B.'s felony indictment is not a conviction. Consequently, neither criminal offense was admissible under Rules 608 and 609. *See* TEX. R. EVID. 608, 609.

There was likewise no exception to the rules of evidence that would permit the admission of these specific instances of conduct under the Confrontation Clause. L.B. allegedly committed the indicted offense in January of 2022, long after the sexual abuse and K.F.'s outcry. And there is nothing indicating that L.B. testified favorably for the State in exchange for clemency or leniency on her pending felony

charge.  As such, the evidence wasn't even "marginally relevant," because it did not show anyone's specific motive for testifying falsely about facts of consequence.  *See Johnson*, 433 S.W.3d at 555.  Although credibility was a central issue, L.B.'s pending felony charge was wholly unrelated to her testimony regarding Appellant's sexual abuse of K.F.

Finally, admitting L.B.'s pending felony charge may have significantly distracted the jury from the issues in Appellant's case, and "presented a significant risk that the jurors . . . might disregard [A]ppellant's actions due to their dislike" of L.B.  *See Henley*, 493 S.W.3d at 95.  Appellant thus failed to demonstrate that evidence of L.B.'s pending felony charge was admissible under the Confrontation Clause to prove bias.  *See Johnson*, 433 S.W.3d at 552.

Having determined that Appellant failed to preserve his Confrontation Clause complaint, and that the trial court would not have abused its discretion in overruling any Confrontation Clause objections, we overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


W. BRUCE WILLIAMS
JUSTICE


October 3, 2024

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.